# MARY TINKER

*v.*

# ALEXANDER D. FORBES.

*Filed at Ottawa January 22, 1891.*

1. EASEMENT—*in what way created.* An easement in one tract of land in favor of another, which is an incorporeal hereditament, can be created only by grant. It can not be created by declarations or by an oral agreement, and if it could, such declarations or agreement could not affect the equitable rights of others, acquired prior to their being made.

2. SAME—*air and light—right of enjoyment—prescription.* One can not acquire a prescriptive right to the enjoyment of air and light as an easement appurtenant to an estate, by an undisturbed user for twenty years.

3. Nor will the continual assertion of a party's right to have the free passage of air and light to his windows over the adjoining land of another, without any *acts* on his part in support of his claim; nor will the mere acquiescence of the owner of the adjoining land, without any *act* of recognition of such right, estop the latter from disputing such alleged prescriptive right.

4. SAME—*evidence—whether establishing an easement.* The fact that an easement may be shown which renders a lot servient to another joining it on the east, has no tendency to establish a similar easement in such lot appurtenant to another lot on the west.

5. SAME—*easement as appurtenant to the estate.* Where an easement has become appurtenant to a dominant estate, a conveyance of that estate carries with it the easement belonging to it, whether mentioned in the deed or not.

6. SAME—*a deed construed—whether conveying a mere easement, or the fee.* A deed for a certain interest in the grantor's water power on a river also conveyed two lots described in a block, and "also, for the purpose of locating proper water-wheel and races to draw said water, the east half of a certain other lot," etc.: *Held,* that the effect of the deed was to convey the fee in such half lot, and not a mere easement or servitude.

7. SAME—*condition in deed—limitation of use of premises conveyed— a deed construed.* The words in such deed, "for the purpose of locating proper water-wheel and races to draw said water," do not constitute a condition, as there is no provision for re-entry for condition broken, or words indicating an intention that the appropriation of the premises to any other purpose should defeat the estate granted. Nor can the

words used be construed as a covenant on the part of the grantee to use the property for the purposes named, and none other.

8. In the same part of the deed was this clause : "No building is to be erected or business carried on on said east half  *  *  * that shall materially increase the fire exposure of the building on either side of said half lot; also, no building or erection is to be put up on said half lot that shall darken any light, within three feet of the west line of said half lot :" *Held,* that the limitation or restriction on the use of the half lot was not confined to the mere location of a water-wheel and race, and such structure as might be fairly necessary to cover and protect the water-wheel, but the deed, taken as a whole, contemplated the erection of a business building, to be used for business purposes, subject only to the two limitations above named.

9. A limitation in a deed for a half lot, that no building is to be erected or business carried on on the premises materially increasing the fire exposure of the building on either side of such half lot, and that no building should be erected thereon that should darken any light, within three feet of the west line of such half lot, is in the nature of an exception or reservation to the grantor, of an incorporeal right in the land granted ; and as such reservation was made for the benefit of the adjoining half lot, such right is in the nature of an equitable easement appurtenant to that half lot.

10. APPEAL—*whether a freehold involved—of an easement appurtenant to the fee.* Where the owner of the west half of a lot, by bill, seeks to establish and maintain a perpetual easement appurtenant thereto, to have the east half of the lot kept free from buildings of every character, other than those necessary to provide a proper shelter and covering for a water-wheel and water race, so that light coming from the east half of the lot to the windows of a building on the west half shall not be obstructed or diminished, and so that such building shall not be subjected to any increased exposure to fire, a freehold will be involved, within the meaning of the statute allowing appeals directly from the trial court to the Supreme Court, a perpetual easement appurtenant to an estate in fee being a freehold.

APPEAL from the Circuit Court of Winnebago county; the Hon. JAMES H. CARTWRIGHT, Judge, presiding.

This was a suit in chancery, brought by Mary Tinker against Alexander D. Forbes, to restrain him from erecting a building on the east half of lot 9, in the south block of the Rockford Water Power Company's lots, west of Rock River, in the city of Rockford. The pleadings on the part of the complainant

as finally passed upon by the court consisted of the original bill and two elaborate amendments thereto, and the facts thus alleged, when properly arranged, are, in substance, as follows: That the complainant is, and ever since October 15, 1875, has been, the owner in fee of the west half of said lot 9, and the east half of lot 10 in said block, and two hundred twenty-thousandths of all the water in Rock River, according to the legal tenor and effect of a deed of that date, executed by Franklin M. Needham and wife to her; that acting in reliance upon the terms and conditions of a certain deed of conveyance from said Water Power Company to Duncan Forbes and the defendant, dated June 26, 1866, the complainant, about the year 1877, caused to be erected upon her said premises a substantial stone building, three stories high, about eighty feet in length and about forty feet in width, opposite and westerly from said east half of said lot 9, at an expense of at least $10,000, and has since caused said building to be used and occupied by the Rockford Bolt Works, a corporation for whose use said building was expressly constructed, as her tenant; that in the construction of said building for said corporation, it was necessary that a large amount of window space should be left and a very considerable amount of light afforded to the workmen therein, and that without such light the value of said building for the purposes for which it was designed would be greatly diminished.

The deed of June 26, 1866, from the Water Power Company to Duncan Forbes and the defendant, a copy of which is attached to the bill as an exhibit, granted four hundred twenty-thousandths of the water of Rock River and also conveyed "lots 12 and 13, in west block, and also for the purpose of locating proper water-wheel and races to draw said water, the east half of lot 9, in the south block, all in the Rockford Water Power Company's lots west of Rock River, in said city, as per last recorded plat. * * * Also, no building is to be erected or business carried on on said east half of said lot 9 in the

south block that shall materially increase the fire exposure of the building on either side of said half lot. Also, no building or erection is to be put up on said half lot that shall darken any light, within three feet of the west line of said half lot."

The bill further alleges that said premises of the complainant and defendant and the adjoining lands for a considerable distance on either side thereof, including lots 7, 8, 9 and 10 of said south block, were originally owned by said Water Power Company, a corporation organized for the purpose, among others, of furnishing water power for manufacturing establishments, with race-ways and reasonable access to light, and fire protection, to manufacturers using its power; that said company platted said property into lots, which were marked and designated as lots 7, 8, 9 and 10, in said south block of said addition; that soon thereafter, and before conveying away any of said lots, said company determined and resolved that the east half of said lot 9 should be kept open for the general benefit of the whole water power property, and a protection against the spread of fire, and for the purpose of giving light and air to the property on each side thereof, and that said east half of said lot should be used only as a race-way for water and for the purposes of a water wheel thereon, and for the purpose of keeping the same free from buildings except such, if any, as should be necessary for the protection of an ordinary water-wheel, and that such building should be of such character as not to increase the hazard from fire, or obstruct the light or air from property adjoining said half lot; that afterwards, and about June 26, 1866, said Water Power Company conveyed to Ralph Emerson and William A. Talcott the west half of said lot 9 and the east half of said lot 10, said two half lots constituting one lot abutting on said east half of lot 9 on the west; that about November 15, 1867, said Emerson and Talcott conveyed their two half lots to Franklin M. Needham, and that on the 15th day of October, 1875, said Needham conveyed the same to the complainant as above stated; that

said Water Power Company, in making its said deed to said Emerson and Talcott, represented to and agreed with them that the east half of lot 9 was dedicated to the uses aforesaid, so that it could not be used for any building that would obstruct the light or air of the lots so conveyed to them, and that it would be used only for the purposes of a race-way and water-wheel, and such fire-proof building as should be needed for the mere protection of the water-wheel, and that said Emerson and Talcott took said property relying upon said representation and agreement; that said Emerson and Talcott, when conveying to said Needham, made the same representations and agreement, and he took said property relying thereon, and that said Needham, in conveying said property to the complainant, made the same representations, and that she took said property in good faith relying thereon; that all of said parties have, during the time of their ownership, continually, openly, notoriously and adversely asserted their right to have the east half of said lot 9 used only for race-way and water-wheel purposes, and to have the same kept unobstructed and clear of all buildings as aforesaid; that the owners of all interests and rights in the east half of said lot 9 have directly, positively and continually recognized said right in the east half of said lot 9 as appurtenant to the property conveyed to the complainant, and as appurtenant to the property east of said half lot, from before the date of said conveyance by said Water Power Company to said Emerson and Talcott down to about July 1, 1889, when for the first time the defendant commenced to deny said right and the existence of said easement; that the complainant, for a space of more than twenty years, has enjoyed said easement of air, light and safety from fire exposure under an asserted claim of right, and in a manner open and notorious to all and recognized by all.

The bill further alleges that in the year 1865, a question arose on the part of the then owners of lots 7 and 8 in said half block, being the lots lying immediately east of the east

15—136 ILL.

half of said lot 9, as to the right of any person to erect a building on said half lot, or to permit or cause any building to stand thereon other than a water-wheel cover; that said question arose in relation to a building known as the Rockford File Factory, which had been moved on to said half lot; that William Dyson, who was then the owner of said lots 7 and 8, applied to said Emerson, who was supposed to be the secretary of the Water Power Company, and was informed by him that the purpose and policy of said company was to leave a portion of said lot 9 for a water race-way, and to prevent the spread of fire and to give an avenue for use in case of a general fire in that locality; that said Emerson acting on the suggestion of said Dyson and others interested, remonstrated against the continuance of said building on said half lot and brought its existence to the notice of the officers of the Water Power Company, who decided that the existence of said structure on said half lot was an encroachment upon the rights of the land-owners adjoining said half-lot, and thereupon said Dyson caused a written notice to be served on said Duncan Forbes and the defendant, who were then charged with being responsible for placing said structure on said half lot, and that upon service of said notice, said Duncan Forbes and the defendant caused said building to be removed from said half lot, since which time no building or structure has been placed thereon except an ordinary covering for the water-wheel, which does not rise more than three feet above the surface of the street in front of said premises.

It is further alleged that the Rockford Woolen Mills, a corporation, has succeeded to the rights of said Dyson in said lots 7 and 8, and now owns a building sixty-two feet long, fifty feet wide and three stories high standing thereon within four feet of the east line of said lot 9, said building having been constructed about April, 1865, in reliance upon the fact that a space would be left on the east half of said lot 9 unincumbered by any building or structure except that of a low

water-wheel cover; that said building has been used as a woolen factory, in the progress of which business the use of oils is necessary, making the business somewhat exposed to fire, and making it desirable and exceedingly necessary that means of escape for operatives employed in said building, in case of fire, should not be obstructed; that a large amount of light is essential to the business carried on in said building, and that there are in the west side of said building thirty windows which would be materially darkened by the erection of a building on the east half of said lot 9; that the easement reserved by said Water Power Company over and upon said half lot is appurtenant to the property on either side of said half lot.

That at the time of the execution of the deed from the Water Power Company to Duncan Forbes and the defendant, a discussion arose between the parties thereto, as to the location of a water-wheel, flume and race-way to carry the water about to be granted and intended for use by said grantees in their manufacturing business north of said lot 9, and that out of such discussion arose that portion of their agreement which was expressed by the clause of the deed above quoted; that before and at the time of said conveyance the objects and purposes for which the east half of said lot 9 was granted were fully discussed and well known by all the parties to said deed, and in order to restrain and limit said grantees with respect to the use of said half lot, they were required to join in said deed and become bound thereby, and they did in fact sign and execute the same for such purpose; that at about the same date said Water Power Company in like manner reserved the west half of said lot 10, and since that time that half lot has been used and known as Trahern's race-way, and is used for the purpose of conveying water from Trahern's shops north of Mill street, the street in front of the property in question, into Kent's Creek, and that the reservation of the race-way on the east half of lot 9 was only a carrying out of the policy

adopted by said Water Power Company with respect to the lots in said south block.

The bill further alleges that the complainant, in erecting her said building, relied upon the terms and conditions of said deed from said Water Power Company to Duncan Forbes and the defendant permitting the use of the east half of said lot 9 for the purpose of locating a proper water-wheel and water race for the use of the grantees and for no other purpose whatever, and also upon the verbal statements to the same effect made to her agents by said Needham at the time of the conveyance of the west half of lot 9 from him to her, and that at the time of said conveyance it was generally understood and believed by those having business relations with said Water Power Company that the premises immediately east of the lots so conveyed to her were to be used and devoted to no purpose which would interfere with the light essential to the proper use and enjoyment of said building to be erected by the complainant for the purpose aforesaid, and were not to be built upon except for water-wheel purposes.

It is further alleged that the complainant caused her said building to be erected ten feet back from the street line on the north, in the belief and expectation that should any structure be erected there, it would be similar to the then existing structure which was a mere covering for a water-wheel located on said lot 9; that on or about July 12, 1889, she became advised that the defendant was contemplating the erection on the east half of said lot 9, and immediately east of the complainant's building, of a stone building seventy-five feet long, nineteen feet wide and three stories high; that thereupon the complainant gave notice in writing of her claim that the conveyance from the Water Power Company to Duncan Forbes and the defendant of said half lot was for the purpose of locating a water-wheel and races and for no other purpose, and that in reliance upon the limitations in said grant, she had erected her building, and that said notice was given with a

view of having the rights of the parties ascertained and deter-
mined before the expenditure by the defendant of any money
in the erection of his proposed building; that afterward the
defendant and the complainant's agent conferred together with
reference to the construction of said proposed building, the
defendant insisting upon his right to build it in the manner
aforesaid, and the complainant's agent maintaining the con-
trary; that after the stone foundation of said building had
been laid, the defendant agreed with the complainant's agent
that work on said building should be suspended until the whole
matter could be presented to the court for determination on
application for a preliminary injunction.

The bill further alleges that said easement in the east half
of said lot 9 was created and retained by said Water Power
Company for the benefit of the complainant and other sur-
rounding property owners, and that valuable and substantial
improvements have been made with respect thereto, and but
for the language contained in the deed under which the de-
fendant claims title, and the statements and representations
of the officers of said company respecting the use and purpose
to which the east half of said lot 9 was to be put, the com-
plainant would not have built in the manner aforesaid, and
that the defendant is now estopped from devoting said half
lot to any other purpose than that of a water-wheel and water-
race location; that the provisions of said deed were in accord-
ance with the general plan and policy of said Water Power
Company in respect to leaving easements for light for business
purposes on its property, and that the restrictions of said
grant to water-wheel and race purposes were in fulfillment of
said company's obligation to other persons who had purchased
or should thereafter purchase adjoining property and build
thereon for business purposes requiring a large amount of
light; that said Duncan Forbes and the defendant paid for
the east half of said lot 9 a diminished price because of said
restrictions imposed upon their use of said half lot; that if

the defendant be permitted to construct the building proposed as contemplated by him, such building will substantially diminish the light which now enters her building and will render the same untenantable for the use and purpose for which the same was constructed and ever since has been used, and also that the erection of the defendant's proposed building will materially increase the exposure of the complainant's building to fire. It is also alleged that said Duncan Forbes has departed this life, and that the defendant has in some manner become successor to the title and interest of said Duncan Forbes in the east half of said lot 9.

The prayer of the bill is, that the defendant be restrained from proceeding with the erection of his proposed building on the east half of said lot 9, and from the erection of any building on said half lot other than a suitable covering for a water-wheel and water-race, and a general prayer for relief. The defendant demurred to the bill, as amended, for want of equity, which demurrer was sustained, and a decree was thereupon entered dismissing the bill at the complainant's costs. From that decree the complainant has appealed to this court.

Mr. N. C. WARNER, for the appellant:

A deed of land passes appurtenances. 1 Greenleaf on Evidence, secs. 279, 282; *Simman* v. *Cloonan*, 81 N. Y. 565.

When a deed is made for a specific purpose, the whole inquiry will be whether that purpose has been followed. *Willoughby* v. *Lawrence*, 116 Ill. 14.

When a party sells on two sides of a space retained by him, and devoted to an easement for light and air, he can not afterwards lawfully build on such intervening space, and stop the light, nor can his grantee. *Story* v. *Odin*, 12 Mass. 117; *Lampman* v. *Milks*, 21 N. Y. 512.

A grantee from the common proprietor, with notice of a previous urban servitude created for the benefit of other grantees of the same common proprietor, will be subordinated to the

same position as the party from whom he purchased. *Tulk*
v. *Moxhay*, 11 Beav. 571; *Trustees* v. *Lynch*, 70 N. Y. 450;
*Tallmadge* v. *East River Bank*, 26 id. 109.

In the present unsettled state of the law with respect to
ancient lights, it may be that nothing further can be claimed
by appellant than a continuous, uninterrupted enjoyment of
the amenity asserted by appellant, under a claim of right, for
more than twenty years before appellee commenced to build,
in July, 1889, which would be a sufficient time to afford a
prescriptive right. *Gerber* v. *Grabel*, 16 Ill. 217; *Guest* v.
*Reynolds*, 68 id. 478.

Reciprocal easements may be created on division and con-
veyance in severalty to different grantees of one entire tract,
by reservation in a conveyance, by a condition annexed to the
grant, or by a covenant, or even a parol agreement of the
parties. *Trustees* v. *Lynch*, 70 N. Y. 447.

While it is true that land can not pass as appurtenant to
land, yet whatever is used and enjoyed with the premises
granted, such as an obvious easement or servitude, essential
to the premises conveyed, in their full enjoyment, though not
strictly necessary, pass by the word "appurtenances." *Doyle*
v. *Lord*, 64 N. Y. App. 436; *Cihak* v. *Klekr*, 117 Ill. 653.

The sale of a house fronting on an open strip of land be-
longing to the vendor, makes that strip of land a highway.
*Woodyear* v. *Hadden*, 5 Taunt. 137.

A dedication is a voluntary appropriation of an estate to
the public or abutting lot owners, and may be accomplished
by writing, by parol, by declarations, or by acts *in pais*, and
may be inferred by acquiescence in the use of it. *Smith* v.
*Flora*, 64 Ill. 93; *Godfrey* v. *Alton*, 12 id. 29; *Smith* v. *Heath*,
102 id. 142.

An easement which will pass by a severance of the heritage
need not be a physical necessity. It is sufficient if it is highly
convenient and beneficial for the estate granted. Goddard on

Easements, 122; Washburn on Easements, 95; *Cihak* v. *Klekr,* 117 Ill. 653.

Where the owner of two heritages, or of one consisting of several parts, has arranged and adapted them so that one derives a benefit and advantage from the other of a continuous and obvious character, and he sells one of them without making mention of those incidental advantages or burdens of one in respect to the other, there is in the silence of the parties an implied understanding and agreement that these advantages and burdens shall continue as before the separation of title.   *Morrison* v. *King,* 62 Ill. 34; *Ingalls* v. *Plamondon,* 75 id. 118; *Cihak* v. *Klekr,* 117 id. 652; *Smith* v. *Heath,* 102 id. 136; *Clarke* v. *Gaffeney,* 116 id. 362.

These property dispositions and arrangements rest upon an application of the doctrine of estoppel *in pais,* and arise out of matter *in pais,* and may consist of acts or declarations, or both, of the party against whom the doctrine is invoked.  See *Smith* v. *Heath,* 102 Ill. 143.

Dedication may be to individuals.  *Smith* v. *Heath,* 102 Ill. 143; *Tallmadge* v. *East River Bank,* 26 N. Y. 107.

The bill avers the resolution and agreement of the company to devote the space occupied by the two half lots in question prior to appellee's purchase, and subsequent reliance thereon for more than twenty years, continuously; also, the previous knowledge on the part of appellee of the agreement and arrangement.   In such case, the corporation grantor should be bound, and a grantee from such corporation could acquire no greater rights than remained in the corporation to bestow; and the declaration of the officers of the company committing such half lots to the subsequent uses made of them, would amount to a dedication.   See *State* v. *Merritt,* 35 Conn. 314; *Waugh* v. *Leech,* 28 Ill. 492; *Flora* v. *Carbean,* 38 N. Y. App. 111; Washburn on Easements and Servitudes, 17, 19, 21.

The declarations of the general officers of the water power company concerning arrangements they had made and would

make with respect to race ways, and uses of half-lots over which race ways were to be placed, are admissible when made before the grantee and those claiming under him; but it may be otherwise if the declarant has parted with title and possession. *Headen* v. *Womack,* 88 N. C. 468.

It was not necessary for the Rockford Water Power Company to part with title in order to dedicate to the use of adjoining owners the east half of lot 9 and the west half of lot 10. Dedication has respect to the possession, and not to the permanent estate. *Rees* v. *Chicago,* 38 Ill. 337; *Smith* v. *Heath,* 102 id. 141; *Hunter* v. *Trustees,* 6 id. 412; *Zearing* v. *Raber,* 74 id. 411.

If the proceedings sought by appellant are effectual, a permanent interest in the half lot in question, in the nature of a perpetual easement, will be established, and in such case a freehold estate will be involved, and an appeal to the Supreme Court will be held proper. *Chaplin* v. *Comrs. of Highways,* 126 Ill. 269; *Lucan* v. *Cadwallader,* 114 id. 285; *Eckhart* v. *Irons,* id. 469.

Messrs. Wm. & E. P. Lathrop, for the appellee:

As to the freehold, and whether involved, see *Railroad Co.* v. *Watson,* 105 Ill. 217; *Kirchoff* v. *Insurance Co.* 128 id. 199; *Malaer* v. *Hudgens,* 130 id. 225; Walker on American Law, 307; 1 Washburn on Real Prop. 549.

The words of grant are sufficient to convey a fee. *Rawson* v. *School District,* 7 Allen, 125; *Episcopal City* v. *Appleton,* 117 Mass. 326.

Bare words and acts are not sufficient to grant an easement in real estate.

An easement being connected with and appurtenant to real estate, so far partakes of the character of the land that it can only be acquired by grant or prescription, which implies a previous grant. *Forbes* v. *Balenseifer,* 74 Ill. 183.

The bill does not charge any grant of the alleged easement to appellant or to her grantors. The bald claim is of a right or easement to have the whole half lot remain unobstructed by buildings, to furnish light and air to appellant's buildings erected in 1877.

By grant, only, could such right be acquired. Light and air are not subjects of prescriptive right in this State. *Guest* v. *Reynolds,* 68 Ill. 478; *Dexter* v. *Tree,* 117 id. 532; *Parker* v. *Foot,* 19 Wend. 309; *Carrig* v. *Dee,* 14 Gray, 583; *Keets* v. *Hugo,* 115 Mass. 104; *Mullen* v. *Striker,* 19 Ohio St. 135; *Doyle* v. *Lord,* 64 N. Y. 432.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

The defendant has appeared in this court and moved to dismiss the appeal for want of jurisdiction. The order of the Circuit Court allowing an appeal directly to this court must undoubtedly have been allowed upon the assumption that the case involves a freehold, and our jurisdiction must depend upon whether that assumption is well founded. The bill asserts and seeks to maintain a right in the nature of a perpetual easement, in respect to which the west half of lot 9, in the south block, etc., is the dominant and the east half of said lot is the servient estate. The alleged easement consists of the perpetual right of the owners of the west half of said lot to have the east half kept free from buildings of every character, other than those necessary to provide a proper shelter and covering for a water-wheel and water-race, so that light coming from the east half of said lot to the windows of the building on the west half shall not be obstructed or diminished, and so that said building shall not be subjected to any increased exposure to fire. This right or easement, if it exists, is clearly an incorporeal hereditament, in which the complainant sets up and is seeking by her bill to establish an estate in fee. A perpetual easement appurtenant to an estate in fee is a freehold.

In *Oswald* v. *Wolf*, 126 Ill. 542, we held that an easement appurtenant to one tract of land, in the nature of a right of way over an adjoining tract, was a freehold, and that a suit to recover the possession and enjoyment of such easement was a suit involving a freehold, within the meaning of the statutes fixing the respective appellate jurisdiction of this court and the Appellate Court. See also *Oswald* v. *Wolf*, 25 Ill. App. 501. We are of the opinion that the same rule applies here. The right which the complainant is seeking to assert and recover, if it exists at all, is a freehold, and the appeal therefore was properly taken to this court.

Assuming then that we have jurisdiction, the only question presented by the appeal is whether the court properly sustained the demurrer to the bill. It is not claimed that the complainant is entitled to any application of the common law doctrine of "ancient lights," even if that doctrine was recognized as in force in this State, nor is it pretended that the Rockford Water Power Company, the common source from which both parties derived their titles, in platting the tract of land of which said lot 9 forms a part, in any way set apart or dedicated the east half of said lot to either a public use or to the use of the owners of the adjacent property. On the plat lot 9 was marked and designated as one of the several lots in the block, and there was nothing there indicating that the east half of said lot was reserved or set apart for any particular uses or subjected to any special burdens. Nor do any of the deeds through which the complainant acquired her title purport to convey any easement or servitude in the east half of said lot, or any right to control the mode in which the east half of said lot should be occupied, used or built upon.

The complainant bases her right to relief upon the terms and limitations of the deed from the Water Power Company to Duncan Forbes and the defendant conveying to them, among other property, the east half of said lot; upon the fact that said half lot had been unoccupied by any building other than

one built for the mere purpose of protecting the water-wheel and race, for a period of more than twenty years, the complainant and her grantors and the owners of the lot adjoining said lot 9 on the east during that time claiming as an easement the right to have the east half of said lot 9 kept free from all buildings, except as aforesaid, for the benefit of their respective lots; and upon the representations alleged to have been made by the officers of said Water Power Company, at the time of the conveyance by it to the complainant's remote grantor of the premises now owned by her, that the east half of said lot 9 would be perpetually kept free from buildings, except as aforesaid.

Considering these three propositions in the reverse order of their statement here, it will be observed by reference to the bill, that the deed from the Water Power Company to Duncan Forbes and the defendant conveying to them the east half of said lot 9, and the deed from said company to Emerson and Talcott, the complainant's remote grantors, conveying to them the west half of said lot 9 and the east half of lot 10, were both executed on the same day, viz, June 26, 1866. There is no allegation as to which deed was executed at the earlier hour, thus leaving room for the presumption arising from the mere fact that there is no allegation to the contrary, that the Forbes deed was executed and delivered and the rights thereby granted vested in the grantees before any rights were acquired by Emerson and Talcott under the deed to them. But it appears affirmatively from the recitals in the Forbes deed that the execution of that deed was merely a compliance with and fulfillment of a contract for such conveyance entered into by said parties February 14, 1865, thus showing that the equitable title of the grantees under the Forbes deed accrued nearly a year and a half before the execution of the deed to Emerson and Talcott.

There are at least two reasons why the easement in the east half of lot 9 claimed by the complainant can not have resulted

from the representations or agreement alleged to have been made by the officers of the Water Power Company at the time of the conveyance of the west half of said lot to Emerson and Talcott. Said easement is an incorporeal hereditament which could be created only by grant, and there is no pretense that there was anything more than an oral agreement in relation to it. In the second place, the equitable title of the grantees in the Forbes deed certainly, and their legal title presumably, had become vested in them before said representations were made or said agreement by the officers of the Water Power Company entered into. Whatever effect then might be given to said representations or agreement as against the Water Power Company, they can not be held to affect the rights of the grantees in that deed, or to create an easement upon property or property rights which had already become vested in them.

Nor does the bill in our opinion make out a case of twenty years' adverse enjoyment of the easement sufficient to establish a prescription from which a previous grant will be implied. The tendency of the decisions in this country for a considerable time has been against the doctrine of gaining a prescriptive right to the enjoyment of light and air as an easement appurtenant to an estate, on the ground that it is incompatible with the condition of a country which is undergoing such radical and rapid changes in the progress of its growth. 2 Washburn on Real Property, (5th ed.) 365, and decisions cited in note. This view was adopted by this court, after full consideration of the question, in *Guest* v. *Reynolds*, 68 Ill. 478.

But an attempt is made to take the case out of the rule thus established by alleging that, for the period of twenty years, the complainant and her grantors had continually, openly and notoriously asserted their adverse right to have the east half of said lot 9 kept unobstructed and clear of all buildings except a covering for a water-wheel, and that the owners of said half lot have continuously recognized that right. There is no alle-

gation, however, of any *acts* done by the complainant or her grantors by way of asserting their right to an easement in said half block, or of any *acts* done by the owners of the servient estate by way of recognizing such right. On the contrary, the averments of the bill show that, on the 26th day of June, 1866, the date of the conveyance by the Water Power Company of both the dominant and servient estates, the east half of lot 9 was used for a water-wheel and water-race, and had no building on it except a mere covering for the water-wheel, and that it so continued up to July 12, 1889, the date at which the defendant commenced the erection thereon of his proposed building. During all that time, covering the entire period of the alleged prescription, the owners of said half lot made no attempt, and presumably had no occasion, to assert their dominion over said half lot by way of occupying it in any other mode or of building upon it in any other form. Nothing transpired during that period by which the complainant's right to her alleged easement was raised or called in question, and we are therefore unable to see how any amount of assertion on her part of her right to such easement could be of any avail. If she had made public proclamation of her right every day, nothing would have been gained. The owners of the servient estate were called upon to give heed to her assertions of her rights only when they came into collision with them in the exercise of their dominion over their own property, and their failure to respond or deny her claims, so long as they had no occasion to change their mode of occupancy—and that is all, in the absence of any averment of *acts* of recognition, the allegation in the bill of their continual recognition of her rights can be held to amount to—can not be set up in aid of her alleged prescription or pleaded by way of estoppel.

There is an allegation, however, that in 1865, the year before the complainant's and defendant's title passed out of the Water Power Company, a question arose between the owner of the lots lying immediately east of said lot 9 and Duncan

Forbes and the defendant in relation to a building which the latter had then lately caused to be moved on to the east half of lot 9, and that on complaint being made to the officers of said company, they decided that the maintenance of said building on said half lot was an encroachment upon the rights of the owner of the lots east, and that upon notice to Duncan Forbes the defendant, they caused said building to be removed. It is difficult to see how the acts of the parties in relation to that building can throw any light upon the rights of the parties here. The rights or easements which may have been granted by the Water Power Company to the owner of said lots east are not shown, and we therefore can not tell upon what claim of right his complaints were based. The Water Power Company then owned both halves of lot 9, and its assenting to or ordering the removal of said building, whatever may have been its reason for doing so, could have had no tendency to create an easement or servitude upon the east half of said lot 9 in favor of the west half of said lot. Furthermore, there is nothing in the bill showing any privity between the complainant and the owner of the lots east of lot 9. Her rights are in no way dependent upon those of such owner, and receive no aid from any assertion of right which he may have made. Even if it should be admitted that there is an easement which renders the east half of lot 9 servient to the lots adjoining it on the east, that fact would have no tendency to establish a similar easement in said half lot appurtenant to the lots adjoining it on the west.

It remains to be considered whether the easement set up by the complainant results from the terms and limitations of the Forbes deed. That deed granted a certain interest in the grantor's water-power on Rock River, and also conveyed to the grantees lots 12 and 13 in the west block of the grantor's lots, "and also, for the purpose of locating proper water-wheel and races, to draw said water, the east half of lot 9 in the south block," etc. It can not be doubted that the effect of this deed

was to convey to the grantees the fee in said half lot. By reference to the operative words of the deed it will be seen that by it the grantor granted, bargained, sold and conveyed, for the purpose above indicated, the east half of said lot 9, the title or interest thus sought to be conveyed being, not an easement or servitude, but the lot itself. What effect then is to be given to the words, "for the purpose of locating proper water-wheel and races to draw said water?" It is plain that they do not constitute a condition, as there is no provision for re-entry for condition broken, nor is there anything in the instrument indicating an intention on the part of the grantor that the appropriation of said premises to any other purpose should have the effect of defeating the estate granted. Nor can said language be construed as a covenant on the part of the grantees to use the property granted for the purpose indicated and none other. No terms are used by which a covenant is ordinarily expressed, nor are there any negative words forbidding the appropriation of the property to other purposes. The contention, however, is, that said language constitutes a limitation on the use to which the grantees are at liberty to appropriate said half lot, thus, in effect, creating a servitude or easement in favor of the adjoining property.

Even if it should be admitted that the clause above quoted, if standing alone, would have had the effect of a limitation or restriction upon the use of the property granted to the mere purpose of furnishing a proper location of a water-wheel and water-race, the conclusion contended for would not follow, as there is other language in the deed which shows that the parties really contemplated a much less restricted use of said half lot. The clause above mentioned has no negative words forbidding the erection on said half lot of a building for business purposes, but in the same part of the deed in which said clause is found, viz, the part usually known as the premises, is the further clause that, "no building is to be erected or business carried on on said east half of said lot 9, in the south

block, that shall materially increase the fire exposure of the building on either side of said half lot; also, no building or erection is to be put up on said half lot that shall darken any light, within three feet of the west line of said half lot." In determining therefore what restrictions the grantor intended to place upon the use of said half lot, all of these clauses must be construed together.

In considering them together, we scarcely find room for doubt that the limitation or restriction upon the use of said half lot intended to be imposed was not, as the complainant contends, to the mere location of a water-wheel and race, and such structure as might be fairly necessary to cover and protect the water-wheel, but that the parties contemplated the erection on said half lot of a business building, to be occupied and used for business purposes, subject to two limitations or restrictions, viz, 1. that the building to be erected should be one which would not materially increase the fire exposure of the buildings on either side, and, 2. that no building which would darken any light should be placed within three feet of the west line of said half lot.

The question then arises whether the building which the defendant proposes to erect is shown by the bill to be violative of either of these limitations. There is no averment that the west wall of said building will be within three feet of the west line of said half lot, and therefore, even though it may darken the windows of the complainant's building, it is not shown to be within the terms of the second limitation; but it is directly and positively alleged that said building will materially increase the fire exposure of the complainant's building. This brings it within the first limitation above mentioned, and entitles the complainant to relief, if she is in a position to avail herself of the limitation in the Forbes deed.

The limitation in that deed is in the nature of an exception or reservation to the grantor of an incorporeal right in the land granted, and the reservation being made for the benefit

16—136 ILL.

of the adjoining half lot, such right is in the nature of an equitable easement appurtenant to that half lot. *Fuller* v. *Arms,* 45 Vt. 400; *Ayling* v. *Kramer,* 133 Mass. 12; 2 Washburn on Real Property, 2. The conveyance of the west half of said lot through mesne conveyances to the complainant, vested said easement in her as appurtenant to the property thus conveyed. Where an easement has become appurtenant to a dominant estate, a conveyance of that estate carries with it the easement belonging to it, whether mentioned in the deed or not. 2 Washburn on Real Property, 317.

As to all other grounds of relief we think the demurrer to the bill was properly sustained, but the defendant should have been required to answer whether his proposed building would materially increase the fire exposure of the complainant's building. The decree will be reversed and the cause remanded with instructions to overrule the demurrer to the extent and in the manner above indicated, and for further proceedings not inconsistent with this opinion.

*Decree reversed.*