## City of Dixon v. Frank H. Messer.

### Gen. No. 4,811.

1. PARTITION FENCE—*what not within meaning of paragraph 60 of section 1 of article 5 of general incorporation act.* A division fence built even on the line between two farms but built wholly by the owner of one of the farms, is not a partition fence within the meaning of the statute regulating the same.

2. PARTITION FENCE—*what not, within meaning of ordinance.* A fence built by the owner of land wholly at his own expense is not a partition fence within the meaning of an ordinance seeking to regulate partition fences.

3. PARTITION FENCE—*when ordinance seeking to regulate, invalid.* A city has no power to regulate the height of partition fences unless, perhaps, the height thereof is so great as to be a menace to human life.

4. ORDINANCE—*with respect to character of fence to be built unreasonable. Held,* that the ordinance in this case seemed unreasonable in its restrictions against the use of wooden fences. The decision, however, was not predicated upon this view of the ordinance.

Action commenced before justice of the peace. Appeal from the Circuit Court of Lee County; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the April term, 1907. Affirmed. Opinion filed October 10, 1907.

**Statement by the Court.** The city of Dixon has in force an ordinance which reads as follows: "No person shall, hereafter, within said city, erect, construct, or maintain any wooden partition fence, or any section or portion thereof, which shall exceed four feet in height, above the

surface of the ground, for the first thirty feet back from the front line of the lot or lots, not exceeding six feet in height above the surface of the ground for the remainder of the distance to the rear end of such lot, except where such partition fence shall form a necessary part of some outbuilding on the premises, under a penalty of not less than three dollars nor more than ten dollars for each offense, and a further penalty of one dollar for every day that such person shall permit such unlawful fence to remain after the first conviction for a violation of the terms thereof."

Frank H. Messer owned a lot in said city fronting west on Van Buren street and running east 150 feet. Michael O'Malley owned the next lot south fronting the same way and running back to the same depth. O'Malley filed a written complaint with a justice of the peace charging that Messer had violated said ordinance by maintaining a wooden partition fence which exceeded four feet in height above the surface of the ground for the first thirty feet back from the front line of the lots, and which extended six feet in height above the surface of the ground from fence to the rear of said lots, and that said fence did not form a necessary part of some building on the premises. A warrant was issued and Messer was arrested, tried and acquitted. The city appealed to the Circuit Court. On the trial there the city proved that Messer built on his own lot, but near the dividing line, a wooden fence the whole length of a lot; that for the first thirty feet back from the front line it averaged from six feet four or five inches to about seven feet in height, and from thence back from six feet one and one half inches to eight feet six and one half inches. The court held the ordinance unreasonable and void and refused to admit it in evidence, and, at the close of plaintiff's proofs, instructed the jury to find for the defendant. A verdict for defendant was rendered, a motion for a new trial was denied, defendant was discharged and the city appeals. The bill of exceptions recites that there was a judgment for costs against the city, but this is a mistake. No such judgment was entered.

JOHN S. DORNBLASER, City Attorney, for appellant; JOHN E. ERWIN, of counsel.

JOHN P. DEVINE and JAMES W. WATTS, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Paragraph 60 of section 1 of article 5 of the general act for the incorporation of cities and villages authorizes cities "to regulate partition fences and party walls." It would seem that to make a fence a partition fence it should be on the line between the real estate of different owners (Jeffries v. Borgin, 57 Mo., 327; Sims v. Field, 74 Mo., 139; Western G. & M. Co. v. Knickerbocker, 103 Cal., 111; Ingwersen v. Barry, 118 Cal., 342); or if not on the true line, then that it must be on a line agreed upon between the respective owners; and it must be built under the statute, each party building his proper portion thereof. It would seem that a division fence built even on the line between two farms, but built wholly by the owner of one of the farms, is not a partition fence, within the meaning of the statute relating to partition fences. McBride v. Lynd, 55 Ill., 411; D'Arcy v. Miller, 86 Ill., 102; McNeer v. Boone, 52 Ill. App., 181; 7 Am. & Eng. Ency. of Law 894, note 5; 896, 897. If such a fence is not within the meaning of the provision for partition fences in the statute expressly regulating such fences between farms, it would be a reasonable conclusion that it is not within the statute above recited conferring power upon cities to regulate partition fences. Defendant built all of this fence on his own land, and without any help or contribution from O'Malley. It was not built under any agreement between them. There is no proof that O'Malley connected his fences with this fence. No action was ever taken by either of them to divide the fence between them under the statute. It therefore seems very doubtful if this was a partition fence, in the statutory sense of that term. If not, it was not controlled by the ordinance here involved.

This ordinance seems unreasonable in its restriction

against the use of wood in fences. It does not forbid a partition fence of any height, made of any other material. Appellee could have built a close fence of sheet iron or a stone wall ten feet high on this line, without violating the ordinance. Neither is it aimed at a close fence merely or a fence of wooden boards placed close together. It would be equally violated by a wooden picket fence above the height prescribed, while an open iron fence could be of any height desired. It therefore seems that the ordinance is not so framed as to be aimed at obstructions to the view or to light and air. No doubt a city can establish reasonable fire limits within its more crowded parts, and forbid wooden structures where they would endanger the public safety, and might include wooden fences in the prohibition. But this has none of the elements of such an ordinance. It applies to the whole city, and it does not forbid wooden structures of any kind except wooden fences above a certain height. Its application to the whole city makes it unreasonable, under City of Chicago v. Gunning System, 214 Ill., 628.

But we prefer to place our conclusion against the validity of this ordinance upon another ground. The ownership of property carries with it the general right in the owner to use and enjoy his property in such a manner as he sees fit. Our society is organized upon this elemental principle. Real property is within the protection of this rule. The owner holds it, however, subject to such regulations as are necessary to protect society. He may not erect anything offensive, such as a lime kiln, a dye house, a privy, a tan vat, so near the house of another as to destroy its use, nor a powder magazine dangerous to life and property, but he may erect a high wooden building or he may build a fence or a wall fifty feet high on his own land, and thereby cut off the light and air and view of his neighbor, unless the neighbor has by grant or by prescription acquired the right to light, air and view over such property, as was expressly held in Guest v. Reynolds, 68 Ill., 478. The doctrine of the case just cited is that, in the absence of grant, the owner of one lot of land has no prescriptive right to an unobstructed view, or light or

air, over the adjoining lot of another, no matter how long he may have enjoyed it; and this is approved in Dexter v. Tree, 117 Ill., 532; Tinker v. Forbes, 136 Ill., 221; Keating v. Springer, 146 Ill., 481; Kotz v. I. C. R. R. Co., 188 Ill., 578, and Honsel v. Conant, 12 Ill. App., 259. In Guest v. Reynolds, *supra*, where many authorities are examined, Chandler v. Thompson, 3 Campbell 82, is cited to the effect that the remedy of one whose privacy is disturbed by the opening of a window in a building opposite him, is to build on his own land opposite the offensive window.

These being the rights of the owners of adjacent lots or lands, we do not think that the statute authorizing cities to regulate partition fences was intended to give cities power to restrict the height of partition fences, as here attempted. No doubt the police power would give cities the authority to prevent the erection of a fence so high as to be liable to fall and endanger human life. But, generally speaking, the object of statutes regulating division fences is to secure a fence sufficiently high and of materials sufficiently strong to make the fence effective to keep domestic animals within their owner's enclosure and upon his land, and to prevent the erection of partition fences so insufficient as to permit ordinary domestic animals to get over or through them. 7 Am. & Eng. Ency. of Law, 900. But we find nothing in the history or language of the legislation on this subject in this state indicating that it was intended to regulate partition fences by limiting their height. Especially should the statute not be so construed when applied to a fence built by a party wholly on his own land, even though it should be called in some sense a division or partition fence. A fence no higher than the limitation prescribed by the ordinance now before us might be wholly insufficient for the lawful purposes· of the party erecting the fence. Suppose he wishes to have his horse graze in his lot, and that his neighbor has shrubs or flowers or trees just the other side of the line. A fence only four feet high might permit his horse to do great injury to his neighbor. We are of opinion that the city is not authorized to make such regulations concerning partition fences

as will forbid such a lot owner from erecting a fence high enough to prevent his own animal from doing injury to his neighbor.    Suppose there were in the neighboring yard, both back and front, such offensive material and sights as were described by us in Deaconess Home & Hospital v. Bontjes, 104 Ill. App., 484, on pages 486 to 488, and 207 Ill., 553, namely, bloody bandages, quilts, sheets and mattresses, airing in the back yard, and in the front yard or on the front porch women about to be confined, clad in loose garments, and other patients with bandaged heads, reclining on easy chairs and attended by nurses who there in the front yard fanned them, administered medicines and took their temperature from time to time.    It is manifest that such a condition of things in a yard immediately adjoining would preclude the owner of a home with a front and back yard from the reasonable use of his own premises, and would make it practically impossible for him to entertain his guests in his own front yard.    Suppose he felt unable to meet the costs of an expensive law suit to secure the use of his own premises in privacy, and should adopt the cheaper expedient of erecting a board fence or a stone wall high enough to enable him to enjoy his own premises without being compelled to view such scenes.    We hold that he would have a right to so protect himself.    Let us suppose such an owner actuated by the very motives which the city here proved that appellee had given to an inquiring witness, who testified that appellee said he built his fence because his family and the other family could not get along well together without something to keep them out of sight of each other, and to protect his family so that they could go into his yard without having trouble with the other people.    We hold he had a right to build such a fence on his own land for his own protection, on the principle that each owner may do that upon his own property which will best suit his own way of enjoying it, unless he thereby commits a nuisance or violates some right of another.    There is nothing about such a fence making it a nuisance.    No public interests are involved.    No rights of the adjoining owner have

been violated; but if they have been he should be left to redress his wrongs in a private action.

It will be observed that the ordinance has nothing to do with the motive with which the fence is built. An open wooden picket fence, not obstructive to the view and not offensive to the next neighbor, would subject the owner to prosecution, if it was two inches over four feet in height in front, or two inches over six feet at the rear, while a stone wall or a solid fence of sheet iron twenty feet in height would be permitted, though the purpose was to injure the neighbor or to destroy his view. The city also introduced proof in this case tending to show that defendant was not actuated by malice but by the laudable desire to prevent trouble between the adjoining families. But if this had been a "spite fence" and the ordinance had been aimed at spite fences, yet the very great weight of authority is that, in states where there is no prescriptive right to an unobstructed view and light and air over adjoining premises of another owner, even a "spite fence" may be built by a landowner, or rather, his motive is immaterial, and he may build such a structure as he pleases on his own land. In Metzger v. Hochrein, 50 L. R. A., 305 (Wis.), such a holding was based upon the general principle that whatever a man may lawfully do on his own land under any circumstances, he may do regardless of the motive for his conduct. The right to erect such a structure, regardless of motive, is strongly supported by the reasoning employed in Letts v. Kessler, 54 Ohio St., 73, where very many authorities are cited in support of that principle; and the authorities on both sides are collected in a note to that case, in 40 L. R. A. 177. See also Giller v. West, 162 Ind. 17. In Flaherty v. Moran, 81 Mich. 52, and 8 L. R. A., 183, the Supreme Court of Michigan held a fence a nuisance which shut out the light and air from a neighbor's window. In a prior opinion by the same court in Burke v. Smith, 69 Mich. 380, a decree of the trial court holding that way was affirmed by an evenly divided court, and the opinion of one half the members of the court, by Campbell, Chief Justice, holds, upon many authorities there

cited, that one may put up such barriers upon his own land as will screen it from observation. Rideout v. Knox, 2 L. R. A., 81 (Mass.), and Karasek v. Peier, 50 L. R. A., 345 (Wash.), were under statutes forbidding or regulating the erection of such structures with malicious intent.

It was for the court to determine whether the ordinance was unreasonable and therefore void. Hawes v. City of Chicago, 158 Ill., 653; McFarlane v. City of Chicago, 185 Ill., 242. We are of opinion that the trial court properly held the ordinance unreasonable as applied to the case made by the proofs here.

The judgment is therefore affirmed.

*Affirmed.*