2023 IL App (3d) 230083

Opinion filed December 28, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| LAW OFFICES OF CHARLES CHEJFEC, LLC, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| MARK FRANZ, THE VILLAGE OF GLEN ELLYN and THIRD & CRESCENT, LLC, | ) ) ) ) | Appeal No. 3-23-0083 Circuit No. 22-LA-605 |
| Defendants | ) ) | |
| (Mark Franz and The Village of Glen Ellyn, Defendants-Appellees). | ) ) ) | The Honorable Timothy J. McJoynt, Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justice Albrecht concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        Plaintiff, the Law Offices of Charles Chejfec, LLC, filed a three-count first amended complaint against defendants Mark Franz, the Village of Glen Ellyn, and Third & Crescent, LLC, for breach of contract and tortious interference with contract, regarding plaintiff's attempt to buy or continue to lease certain commercial real property in Glen Ellyn, Du Page County, Illinois, that was allegedly thwarted by defendants. The Village of Glen Ellyn and its manager, Mark Franz

(collectively referred to as the Village defendants), filed a motion to dismiss (735 ILCS 5/2-615 (West 2022)) counts II and III of the first amended complaint for failure to state a claim of tortious interference.[1] After full briefing and a hearing on the matter, the trial court granted the Village defendants' motion and dismissed counts II and III of the first amended complaint with prejudice. Plaintiff appeals. We affirm the trial court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3        The facts as set forth in plaintiff's first amended complaint and the procedural record can be summarized as follows. In August 2020, Charles Chejfec, an Illinois attorney, formed the plaintiff limited liability company for the purpose of opening his own solo practice law firm. Chejfec decided to locate his law firm in the Village of Glen Ellyn (Village or Glen Ellyn), where he had grown up and had lived for over 50 years. Chejfec found what he believed to be an ideal property (the property or the subject property) for plaintiff to lease in the heart of the Village's downtown area. The property was owned by Third & Crescent, LLC, one of the defendants in this case. Like plaintiff, Third & Crescent was an Illinois limited liability company. Third & Crescent's managers were Charles (CJ) McCann and Michael Anselmo. McCann was a real estate broker and a partner in a real estate development company, and Anselmo was an attorney.

¶ 4        On August 31, 2020, after some negotiations, plaintiff and Third & Crescent entered into a written commercial lease agreement for the subject property. To minimize risk but also provide for stability, Chejfec negotiated for a short-term lease with options for plaintiff to extend the lease and/or purchase the property through exclusive, good faith negotiations with Third & Crescent.

---

[1]Counts II and III of the first amended complaint did not pertain to Third & Crescent. Third & Crescent, therefore, is not involved in this appeal.

The initial term of the lease was for a period of one year, which was to start on September 1, 2020, and end on August 31, 2021.

¶ 5     The option to extend was contained in paragraph 5 of the lease, which stated:

"Lessee shall have the right to renew the Lease one time on the same terms and conditions by giving written notice to Lessor no less than 60 days prior to the expiration of the Lease ('Renewal Term'). If Lessee renews the Lease and then desires to extend it beyond the Renewal Term, Lessee shall give Lessor written notice no less than 60 days prior to the expiration of the Renewal Term of its intent to extend the Lease ('Exclusive Right to Extend'). In the event Lessee triggers its Exclusive Right to Extend, the Parties shall enter into good faith negotiations for a new lease. At no time prior to or during the Exclusive Right to Extend period shall Lessor negotiate with or otherwise discuss leasing the Premises to any other party."

¶ 6     The option to purchase the property was contained in paragraph 19(f) of the lease, which stated:

"In the event Lessor decides to sell the property during the Initial Term or Renewal Term, Lessor shall notify Lessee in writing of its intent to sell before listing or otherwise advertising the property for sale. Lessee shall then advise Lessor in writing within three days of its interest in buying the property. In the event Lessee expresses its interest in buying the property, the Parties shall enter into exclusive, good faith negotiations for the sale of the property. Lessor shall only market the property to or negotiate with other parties if Lessee indicates in writing within three days that it is not interested in buying the property or the Parties fail in their negotiations to reach an agreement for the sale of the property."

3

¶ 7        In October 2020, shortly after plaintiff moved into the property, it received a letter from the Village that the sign in the front of the property was not in compliance with the Village code. Because plaintiff intended to use the sign for its law practice and had a prior relationship with the Village Attorney, Greg Mathews, Chejfec agreed to handle the sign dispute with the Village. Over the next few months, Chejfec had numerous phone and e-mail conversations with Mathews regarding the sign dispute. In a conversation that took place in November 2020, Chejfec informed Mathews that plaintiff had leased the property from Third & Crescent to operate a law firm at that location, that the business was doing well, and that plaintiff was planning to renew the lease through August 2022. Eventually, in December 2020, Chejfec resolved the sign dispute with the Village, and Mathews sent Chejfec a letter agreeing that the Village would not prosecute any sign code violations on the property at the current time.

¶ 8        In March 2021, because the law office was doing well, Chejfec notified Third & Crescent that plaintiff was exercising its right to renew the lease for an additional year from the current expiration date of August 31, 2021, to a new expiration date of August 31, 2022.

¶ 9        In January 2022, the Village bought a shuttered hotel property in Glen Ellyn (hotel property) for $2.85 million, with the intent of selling it to a commercial developer. Because the hotel property was located on Roosevelt Road, where more than 40,000 commuters passed daily, it was a highly desirable property for commercial developers that offered the potential for a large profit. As a partner in a real estate development company, McCann was interested in being selected by the Village to be the developer for the hotel property. The Village had committed, however, to conduct an open and public process for determining how the property would be developed and for selecting the developer. As Village Manager, Franz was going to be highly involved in that process.

¶ 10        Unbeknownst to Chejfec, by April 2022, the Village had identified a vacant former bank property in downtown Glen Ellyn that it wanted to develop into a park. Because the bank property was located near or next to the subject property, the Village wanted to acquire the subject property for the park project as well. By the latter part of that month, McCann knew that the Village wanted to acquire the subject property, and Franz knew that McCann wanted to be selected as the developer for the hotel property.

¶ 11        On May 2, 2022, McCann contacted Chejfec and told him that Third & Crescent intended to sell the subject property. Chejfec immediately responded that plaintiff was interested in buying the property. After some discussion, Chejfec and McCann agreed that plaintiff would purchase the property from Third & Crescent for $550,000. McCann invited Chejfec to inspect the property and to schedule a walk-through of the residence on the second floor. At the conclusion of their conversation, Chejfec reminded McCann, consistent with paragraph 19(f) of the lease, not to list the property or to seek other buyers while Chejfec inspected the property and took the next couple of weeks to arrange for financing or a cash purchase. McCann assured Chejfec that he would not do so.

¶ 12        Despite that assurance, however, McCann e-mailed Franz later that same day and launched his plan to leverage the sale of the subject property into the much more lucrative deal of becoming the developer for the hotel property. McCann's e-mail stated, in pertinent part:

          "CJ McCann here[.] *** We have a few developments underway in Du Page and Kane and I am hoping to pick your brain on what could work for [the subject property] and [the hotel property] developments. *** I'm trying to gauge if we want to make another play at [the subject property] development ***. I also wanted to have a brief discussion on what the Village thinks will be the highest and

best use for [the hotel property] on Roosevelt, I think we have a couple good concepts for there."

¶ 13    The following day, Franz responded to McCann's e-mail and told McCann that he would "love" to discuss both matters.

¶ 14    On May 13, 2022, McCann continued to reach out to the Village in an effort to market the subject property to the Village and to link the sale of the subject property to his interest in being selected as the developer for the hotel property. McCann left a voicemail for Franz that stated, in pertinent part:

"Hey Mark, CJ McCann. Sorry I missed you yesterday. *** I know we want to discuss a couple things about [the subject property] and what's going to happen there and then want to talk to you about [the hotel property] real quick too and just get a couple thoughts, see what concepts might get some traction."

¶ 15    Over the next several days, McCann and Franz negotiated the sale of the subject property to the Village. On May 16, 2022, McCann had one of his employees e-mail Franz a purchase offer. Approximately two weeks later, after some additional negotiations, McCann and Franz reached an agreement on the sale of the subject property and signed a written commercial sales contract to that effect. Pursuant to the sales contract, the Village agreed to pay Third & Crescent $600,000 for the subject property, which was $50,000 more than plaintiff had agreed to pay. The contract set the closing date for the sale as July 31, 2022, and required Third & Crescent to terminate plaintiff's lease of the property, which Third & Crescent had incorrectly told the Village was a month-to-month lease.

¶ 16    As McCann was marketing the subject property to, and negotiating with, the Village, plaintiff was doing its due diligence for its purchase of the property from Third & Crescent.

Chejfec inspected the property, performed a walk-through of the second floor residence, and arranged for payment of the purchase price. Although an inspection of the property revealed mold and asbestos, Chejfec was satisfied that those conditions could be remediated. On May 18 and 19, 2022, Chejfec called and texted McCann to finalize arrangements for the sale of the property, but McCann did not initially respond.

¶ 17 On May 23, 2022, Chejfec again called McCann. McCann returned Chejfec's call a short time later and informed Chejfec that Third & Crescent was not going to sell the subject property to plaintiff because Third & Crescent had agreed to sell the property to the Village. Chejfec tried to find out what had occurred, but McCann was not forthcoming with information.

¶ 18 About a week later, on June 1, 2022, Chejfec sent Franz and the Village a cease and desist letter in an effort to enforce plaintiff's rights under the lease. In the letter, Chejfec advised the Village that plaintiff was the current lessee of the subject property, that plaintiff had exclusive rights under paragraphs 5 and 19(f) of the lease to negotiate in good faith with Third & Crescent to extend the lease and/or purchase the property, and that Third & Crescent had agreed in early May 2022 to sell the property to plaintiff for $550,000. Chejfec did not attach a copy of the lease to the letter but did set forth the exact language of paragraphs 5 and 19(f) of the lease in the letter. At the conclusion of the letter, Chejfec invited Franz to contact him if the Village wanted to resolve the matter amicably.

¶ 19 Rather than contacting Chejfec, upon receiving the cease and desist letter, Franz tried to contact McCann, but McCann did not respond. Unable to reach McCann, Franz forwarded the cease and desist letter to McCann with the note, "fyi." Although Chejfec had copied Mathews and the Village trustees on his cease and desist letter, Franz did not include Mathews or any of the trustees on his "fyi" email to McCann. Immediately after Franz had forwarded the cease and desist

7

letter to McCann, McCann called Franz, and the two spoke on the phone for nine minutes. A few minutes after the conversation had ended, Franz e-mailed McCann about the hotel property, stating: "CJ: thanks for being flexible, we are rescheduling the meeting [a workshop on the hotel property] to June 13 at 7 pm tentatively ***[.]"

¶ 20    The next day, McCann called and left Franz the following voicemail, assuring Franz about the sale of the subject property to the Village:

"Hey Mark, CJ McCann. I just wanted to stay on track with you, myself, and my partner and a real estate attorney, [Michael] Anselmo—[who] had been in contact with [Chejfec] yesterday, the tenant at [the subject property]. Obviously, it didn't go well but just wanted to fill you in on that. It should be something that we should…be able to stay in control of and so we'll catch up whenever you've got a couple extra minutes. Thanks, talk to you soon. Bye[.]"

¶ 21    A few hours later, Franz e-mailed McCann and copied Mathews on the e-mail, stating: "CJ: I got your message, do you have time to update Greg Mathews, Village Attorney, and myself tomorrow on this matter. If so, what is a good time?"

¶ 22    The following day, on June 3, 2022, Franz and Mathews called McCann, and the three had a phone conference that lasted 12 minutes. During the phone conference, McCann had one of his employees e-mail Franz and Mathews a copy of plaintiff's lease. At the conclusion of the conference, McCann and Franz decided that they were still going to proceed with the sale of the subject property to the Village. However, in light of Chejfec's cease and desist letter, the two were concerned that plaintiff might delay the closing date. Thus, they agreed to amend the sales contract to account for that possibility. A few minutes after the phone conference had ended, McCann had his employee e-mail Franz and Mathews an amended sales contract in which the closing date was

8

changed from "July 31, 2022," to "15 Days after confirmed vacancy." The e-mail contained the instruction, "[p]lease see attached for the updated close date on the contract." Later that same day, Franz e-mailed McCann, without copying Mathews or anyone else, confirming that the hotel property workshop would be held on June 13, 2022.

¶ 23    After the conference call with McCann, Village Attorney Mathews had concerns about the appearance of moving forward with the sale of the subject property in light of plaintiff's contract rights under paragraphs 5 and 19(f) of the lease. On approximately June 6, 2022, Mathews communicated his concerns to Franz, and Franz communicated those concerns to McCann. Worried that the sale to the Village was in jeopardy, McCann called and left the following voicemail to assure Franz that Third & Crescent had a timeline and strategy to complete the sale of the property to the Village:

> "Hey Mark its [*sic*] CJ McCann. Hey give me a call when you've got a couple minutes. I wanted to talk to you about [the subject property], spoke with my partner [Michael Anselmo] on it, we have a couple thoughts as far as what's [*sic*] the best timeline and strategy is going to look like. So give me a call whenever you've got a sec."

¶ 24    On June 7, 2022, Anselmo, acting as the attorney for Third & Crescent, sent a letter to the Village, canceling the sales contract pursuant to the attorney review clause that the contract contained. Although the cancellation appeared to have been directed by Third & Crescent, Franz's confidential manager's report from later that month indicated that the cancellation had actually been directed by the Village, as the report stated: "Given the issues raised by the existing tenant in [the subject property], the owner has terminated our contract for $600K at our request. Once the owners are able to resolve their issues with the tenant, we may revisit the offer."

9

¶ 25    After the Village received the cancellation letter, Mathews contacted Chejfec, informed him that Third & Crescent had canceled its sales contract with the Village, and encouraged him to resume his negotiations with Third & Crescent for the sale of the subject property to plaintiff. Chejfec told Mathews that he would be willing to do so if the Village would provide plaintiff with a written representation that the Village no longer had any desire or interest in acquiring the subject property. Mathews declined Chejfec's request.

¶ 26    Shortly thereafter, Chejfec e-mailed McCann and advised him that plaintiff wanted to move forward with its agreement to buy the subject property. A few minutes later, McCann sent an e-mail response, stating that Third & Crescent was no longer planning to sell the property and informing Chejfec that all discussions had to go through Anselmo. Since Third & Crescent had refused to sell the property to plaintiff, plaintiff triggered its option to negotiate in good faith to extend the lease. Chejfec e-mailed Anselmo, stating "[i]f Lessor will not honor its agreement to sell [plaintiff] the property as previously agreed, please advise me of lessor's position on negotiating an extension of the current lease." Anselmo responded, stated that he had no knowledge of McCann's prior agreement to sell the property to plaintiff, and encouraged Chejfec to make an offer. As for extending the lease, Anselmo stated in his e-mail response that Third & Crescent was "not interested in extending [the lease] past the current term."

¶ 27    The following month, July 2022, plaintiff filed its original three-count complaint in the trial court. In count I of the original complaint, plaintiff alleged that Third & Crescent had breached paragraphs 5 and 19(f) of the lease by refusing to exclusively negotiate with plaintiff in good faith for an extension of the lease or for the sale of the subject property to plaintiff. In counts II and III of the original complaint, plaintiff alleged that the Village and Franz, respectively, had tortiously interfered with plaintiff's contract rights under the lease by inducing Third & Crescent, through

10

certain actions that were specifically listed in the original complaint, to breach paragraphs 5 and 19(f) of the lease. Plaintiff attached to the original complaint numerous exhibits, including the written lease agreement, some of Franz's confidential manager's reports, some of the e-mails that were referenced above, the written commercial sales contract that had been entered into between Third & Crescent and the Village for the sale of the subject property, the cease and desist letter that Chejfec had sent to Franz and the Village, and the cancellation letter that Anselmo had sent to the Village canceling the sales contract for the sale of the subject property to the Village. Plaintiff's underlying theory of the case, as alleged throughout the original complaint, was that Third & Crescent (through McCann) and the Village defendants (primarily through Franz) had entered into a *quid pro quo* scheme to accomplish their respective objectives of McCann being selected as the developer for the hotel property (or at least being given inside information and favorable treatment in the selection process) and the Village being able to acquire the subject property, even though Third & Crescent and the Village defendants had to knowingly and intentionally violate and interfere with plaintiff's contract rights under the lease to accomplish those objectives. In keeping with that underlying theory, plaintiff alleged further in the original complaint that the cancellation of the sales contract between Third & Crescent and the Village was merely a ruse or a sham to create the appearance that Third & Crescent had satisfied its contractual obligation under the lease to exclusively negotiate in good faith with plaintiff for the sale of the property and that, despite that cancellation, Third & Crescent and the Village defendants were still intending to complete the sale of the property to the Village.

¶ 28        On August 31, 2022, plaintiff moved out of the subject property because the lease term had expired and Third & Crescent had refused to consummate the sale of the property to plaintiff or to negotiate with plaintiff to extend the lease. Less than two weeks later, Third & Crescent listed the

11

property for rent. The listing was for a "[s]hort-term lease only—month to month or less than 6 months preferred" and did not offer the property for sale.

¶ 29    That same month and the following month (August and September 2022), Third & Crescent and the Village defendants filed motions in the trial court to dismiss the respective counts of plaintiff's original complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2022)).[2] In the motions, Third & Crescent and the Village defendants asserted that the original complaint failed to plead sufficient facts to state a claim for breach of contract (count I) or for tortious interference with contract (counts II and III). More specifically, as to counts II and III, the Village defendants asserted in their motion that plaintiff failed to plead sufficient facts to establish that the Village defendants had actual knowledge of plaintiff's rights under the lease or had purposely sought to interfere with those rights.

¶ 30    In November 2022, following full briefing and a hearing on the matter, the trial court denied Third & Crescent's motion to dismiss count I of the original complaint, finding that count I was sufficient to state a claim for breach of contract against Third & Crescent.[3] The trial court granted, however, the Village defendants' motion to dismiss counts II and III of the original complaint, implicitly finding that counts II and III were insufficient to state claims of tortious interference with contract against the Village defendants. In so doing, the trial court noted, although somewhat ambiguously, that (1) the facts alleged in the original complaint established that the Village defendants did not learn of plaintiff's lease with Third & Crescent until June 3, 2022, (2) any conduct by the Village defendants before that date was moot, and (3) the Village

---

[2]Third & Crescent also sought to dismiss count I of the original complaint pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2022)).

[3]The trial court also denied Third & Crescent's motion to dismiss count I of the original complaint pursuant to section 2-619 of the Code.

defendants' conduct after that date, as established by the facts alleged in the original complaint, did not amount to interference with plaintiff's contract rights under the lease.

¶ 31　　　　Later that same month, after being granted leave to amend by the trial court, plaintiff filed its three-count first amended complaint in this case. The allegations and theories contained in the first amended complaint were very similar to those contained in the original complaint, although plaintiff added some additional allegations to the first amended complaint to try to further establish that the Village defendants knew about the existence of plaintiff's contract relationship with Third & Crescent well before June 3, 2022. In count I of the first amended complaint, plaintiff reasserted its breach of contract claim against Third & Crescent. In counts II and III of the first amended complaint, plaintiff again alleged that the Village and Franz had tortiously interfered in plaintiff's contract with Third & Crescent. The Village defendants had done so, according to the first amended complaint, by (1) negotiating with Third & Crescent for the sale of the subject property, (2) agreeing to pay $50,000 more for the property than plaintiff, (3) entering into a sales contract for the property on June 3, 2022 (the date that McCann's employee emailed the Village defendants the amended sales contract with the closing date changed), and (4) offering and providing McCann exclusive information and assistance to become the developer of the hotel property. Plaintiff attached to the first amended complaint many of the same exhibits that it had attached to the original complaint. Plaintiff also attached a few new exhibits, two letters, to try to further establish the earlier contact that Chejfec had with the Village in the latter part of 2020 relating to the sign dispute.

¶ 32　　　　The following month, the Village defendants filed a section 2-615 motion to dismiss counts II and III of the first amended complaint. In the motion, the Village defendants again asserted that counts II and III failed to state a claim for tortious interference with contract because the facts

13

alleged failed to establish that the Village defendants had actual knowledge of plaintiff's rights under the lease and had purposely sought to interfere with those rights.

¶ 33　　In February 2023, following full briefing and a hearing on the matter, the trial court granted the Village defendants' motion to dismiss. In so doing, the trial court found that although the Village defendants might have been aware of plaintiff's contract relationship with Third & Crescent prior to June 3, 2022, the Village defendants did not have knowledge of paragraphs 5 and 19(f) of the lease when they negotiated and entered into the contract with Third & Crescent for the purchase of the subject property and did not intentionally interfere with plaintiff's contract rights under the lease. The trial court commented that the first amended complaint was very similar to the original complaint and that the deficiencies in counts II and III had not been cured. The trial court stated further that plaintiff's theory that Third & Crescent and the Village defendants had engaged in a "sham cancellation strategy" was "all rank conjecture and full of conclusions" and was not supported by factual allegations in the first amended complaint. The trial court, therefore, dismissed counts II and III of plaintiffs' first amended complaint with prejudice and made an express written finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying enforcement or appeal of that order. Plaintiff appealed.

¶ 34　　　　　　　　　　　　　　　II. ANALYSIS

¶ 35　　On appeal, plaintiff argues that the trial court erred in granting the Village defendants' section 2-615 motion to dismiss counts II and III of plaintiffs' first amended complaint for tortious interference with contract. Plaintiff asserts that the motion should not have been granted because plaintiff pled sufficient facts in the first amended complaint to satisfy all of the elements of its claims for tortious interference. More specifically, as to the two elements of tortious interference that are in dispute in this appeal—the knowledge and inducement elements—plaintiff contends

14

that (1) pursuant to the established law on tortious interference, to satisfy the knowledge element, plaintiff was only required to plead sufficient facts to establish that the Village defendants had knowledge of the existence of plaintiff's contract relationship with Third & Crescent when the Village defendants committed the alleged acts of inducement, (2) the trial court incorrectly found that to satisfy the knowledge element, plaintiff had to plead sufficient facts to establish that the Village defendants had knowledge of the actual contract terms (paragraphs 5 and 19(f) of the lease) when the Village defendants committed the alleged acts of inducement, and (3) even if the trial court's interpretation of the knowledge element was correct, the trial court's decision was still erroneous because plaintiff pled sufficient facts to establish that the Village defendants had actual knowledge of paragraphs 5 and 19(f) of the lease when they induced Third & Crescent to breach those paragraphs.[4] For those reasons, plaintiff asserts that counts II and III of its first amended complaint were sufficient to establish the knowledge and inducement elements (and all of the other elements of the tort) and to state claims for tortious interference with contract against the Village defendants. Plaintiff asks, therefore, that we reverse the trial court's judgment, granting the Village defendants' motion to dismiss counts II and III of the first amended complaint, and that we remand this case for further proceedings on those counts.

¶ 36    The Village defendants argue that the trial court's ruling was proper and should be upheld. The Village defendants assert that their section 2-615 motion to dismiss counts II and III of the first amended complaint was correctly granted because plaintiff failed to plead sufficient facts in the first amended complaint to state a claim of tortious interference with contract against the Village defendants. According to the Village defendants, plaintiff's first amended complaint was

---

[4]Plaintiff generally takes the position, in its appellate briefs, that only the knowledge element is in dispute in this case. However, it is clear from the Village defendants' arguments in the trial court and on appeal and from the trial court's rulings on the Village defendants' motions to dismiss that both the knowledge and inducement elements are at issue in this case.

15

lacking as to both the knowledge and inducement elements of tortious interference in that plaintiff failed to plead sufficient facts to establish that (1) the Village defendants had knowledge of the specific terms of the lease when they negotiated to purchase the subject property from Third & Crescent (the knowledge element), and (2) the Village defendants took any action to intentionally and unjustifiably induce Third & Crescent to breach the lease after the Village defendants learned of the specific terms of the lease (the inducement element). To the contrary, the Village defendants maintain, the facts alleged in the first amended complaint and contained in the exhibits attached thereto showed that once the Village defendants became aware of the actual terms of the lease and had the opportunity to analyze those terms, they terminated their contract to buy the subject property from Third & Crescent and took no further action to pursue a purchase of the property or to intentionally or purposefully interfere with plaintiff's lease. Thus, for all of the reasons set forth, the Village defendants ask that we affirm the trial court's judgment granting the Village defendants' section 2-615 motion to dismiss counts II and III of plaintiff's first amended complaint.

¶ 37        A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based upon defects that are apparent on the face of the complaint. See 735 ILCS 5/2-615 (West 2022); *Heastie v. Roberts*, 226 Ill. 2d 515, 531 (2007). In ruling upon a section 2-615 motion, a court must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Heastie*, 226 Ill. 2d at 531. The crucial inquiry in deciding a section 2-615 motion to dismiss is whether the allegations in the complaint, when considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). A plaintiff is not required to prove his case in the pleading stage—he must merely allege

16

sufficient facts to establish all of the essential elements of his cause of action. *Visvardis v. Eric P. Ferleger, P.C.*, 375 Ill. App. 3d 719, 724 (2007). A cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that the plaintiff cannot prove any set of facts that will entitle the plaintiff to relief. *Heastie*, 226 Ill. 2d at 531. In reviewing a trial court's ruling on a section 2-615 motion to dismiss, the appellate court applies a *de novo* standard of review. *Id.* at 530-31. When a *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. The appellate court may affirm a trial court's grant of a section 2-615 motion to dismiss on any basis supported by the record. *Fidelity National Title Insurance Co. of New York v. Westhaven Properties Partnership*, 386 Ill. App. 3d 201, 220 (2007).

¶ 38        Illinois law recognizes the tort of tortious interference with contract as a valid cause of action. See *Kurtz v. Illinois National Bank of Springfield*, 179 Ill. App. 3d 719, 726-27 (1989). The tort is premised upon the concept that a person's business relationships are property interests and that such interests are entitled to protection from unjustified tampering by others. See *id.* at 727. The general rule, as set forth in the Restatement (Second) of Torts, is that

> "[o]ne who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."[5] Restatement (Second) of Torts § 766 (1979).

---

[5]When assessing claims of tortious interference with contract, our supreme court has referred to or cited the applicable provisions of the Restatement (Second) of Torts (1979). See, *e.g.*, *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 513 (1991) (citing Restatement (Second) of Torts § 766 (1979)); *Swager v. Couri*,

To state a cause of action for tortious interference with contract under Illinois law, a plaintiff must plead sufficient facts to establish the following five essential elements of the tort: (1) that a valid and enforceable contract existed between the plaintiff and another party, (2) that the defendant was aware of that contract relation, (3) that the defendant intentionally and unjustifiably induced a breach of the contract, (4) that there was a subsequent breach of the contract by the other party that was caused by the defendant's wrongful conduct, and (5) that the plaintiff suffered damages. See *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 154-55 (1989).

¶ 39        As noted previously, the two elements of the tort that are at issue in this particular case are the second and third elements—the knowledge and inducement elements. The knowledge element has generally not been addressed in the case law on tortious interference with contract, other than a basic statement recognizing the knowledge element as one of the essential elements of the tort. See, *e.g.*, *id.*; *Kurtz*, 179 Ill. App. 3d at 726-27; *Philip I. Mappa Interests, Ltd. v. Kendle*, 196 Ill. App. 3d 703, 708 (1990); *Belden Corp. v. InterNorth, Inc.*, 90 Ill. App. 3d 547, 551-53 (1980). The knowledge element has, however, been addressed in the Restatement, albeit somewhat tangentially. According to the Restatement, to satisfy the knowledge element, the interfering defendant must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of that contract. See Restatement (Second) of Torts § 766, cmt. i (1979). We believe that the Restatement sets forth the correct law on the knowledge element.

¶ 40        The inducement element, on the other hand, has been addressed to some extent in the case law on tortious interference and has also been discussed in the Restatement. Pursuant to the Restatement, to satisfy the inducement element, the defendant's acts of inducement must be both intentional and improper. See Restatement (Second) of Torts § 766 (1979); Restatement (Second)

---

77 Ill. 2d 173, 190 (1979) (citing Restatement (Second) of Torts § 767 (1979)).

18

of Torts § 767, cmt. a (1979). A defendant's acts are intentional if the defendant, in committing those acts, either desired to bring about the harm to the plaintiff (the breach of the contract by the other party) or knew that such a result was substantially certain to be produced by those acts. See Restatement (Second) of Torts div. 9, ch. 37, intro. note (1979); Restatement (Second) of Torts § 766, cmts. h, j (1979); Restatement (Second) of Torts § 767, cmt. d (1979); see also 26 A.L.R.2d 1227 (1952) (recognizing that inherent in the rule of liability for procuring a breach of contract is the requirement that the interfering defendant intended to effect such a result). Whether a defendant's acts are improper, however, is determined based upon a consideration of several factors, including (1) the nature of the defendant's conduct, (2) the defendant's motive, (3) the interests of the defendant and of the other party, and (4) the social interests involved. Restatement (Second) of Torts § 767 (1979). In addition to the above requirements, for a defendant's acts to qualify as acts of inducement, the acts must be directed at the other party in plaintiff's contractual relationship and not at plaintiff. See *Skopp v. First Federal Savings of Wilmette*, 189 Ill. App. 3d 440, 448 (1989). In sum, then, to sufficiently establish the inducement element of tortious interference with contract, a complaint must set forth factual allegations, not conclusions of law, from which it reasonably may be inferred that the defendant's alleged acts of inducement were committed intentionally and improperly and were directed at the other party in plaintiff's contractual relationship. See Restatement (Second) of Torts div. 9, ch. 37, intro. note (1979); Restatement (Second) of Torts § 766, cmts. h, j (1979); Restatement (Second) of Torts § 767 (1979); Restatement (Second) of Torts § 767, cmts. a, d (1979); *Skopp*, 189 Ill. App. 3d at 448-49. A bare assertion to that effect in a complaint is insufficient unless that assertion is supported by allegations of fact. See *Skopp*, 189 Ill. App. 3d at 449.

¶ 41    Applying the law from the Restatement and the case law to the facts of the present case, we find that plaintiff failed to plead sufficient facts in the first amended complaint to establish either the knowledge or inducement elements of tortious interference with contract against the Village defendants. Starting with the knowledge element, plaintiff failed to plead any facts in the first amended complaint to show that the Village defendants had knowledge of either paragraphs 5 or 19(f) of the lease or of the contract rights and obligations contained in those paragraphs when the Village defendants were negotiating to purchase the subject property from Third & Crescent and were entering into a sales contract with Third & Crescent for that purpose (the relevant time period). Additionally, Third & Crescent misled the Village to believe that plaintiff's lease had a month-to-month term. Although plaintiff asserts on appeal that it was only required to show that the Village defendants had knowledge of the existence of the lease during the relevant time period and not that the Village defendants had knowledge of the relevant lease provisions, plaintiff's assertion in that regard is contrary to the law on this issue as set forth in the Restatement. See Restatement (Second) of Torts § 766, cmt. i (1979). As noted above, the Restatement provides that the interfering defendant must have knowledge of both the contract and of the fact that he is interfering with the performance of that contract. *Id.* The only way that the Village defendants in the instant case would know that they were interfering with the performance of the lease by negotiating to purchase the property from Third & Crescent and to have any leases on the property terminated was if the Village defendants knew about the relevant provisions of the lease—that the lease was for a one-year term rather than monthly, and that plaintiff had a right under the lease to negotiate in good faith with Third & Crescent to extend the lease and/or purchase the property.[6]

_____

[6]We do not mean to suggest or imply, however, that an interfering defendant has to know of the exact language of the contract provisions at issue. A more general knowledge of the provisions may be sufficient depending upon the unique facts of the individual case.

¶ 42　　　　In addition to being contrary to the Restatement, the approach advocated by plaintiff in this case is also contrary to common sense. Plaintiff's approach—which would require only that the defendant knew of the existence of a contract between the plaintiff and the other party to satisfy the knowledge element—would, in this context, frequently subject purchasers of commercial properties to potential claims of tortious interference, as such purchasers are often aware that commercial properties have existing leases.

¶ 43　　　　Finally, plaintiff asserts, in the alternative, that if it was required to plead that the Village defendants had knowledge of the relevant provisions of the lease when the Village defendants committed the alleged acts of inducement, plaintiff's first amended complaint satisfied that requirement. We do not agree. Our disagreement with that assertion, however, is based upon the third element of the tort, the inducement element, rather than upon the knowledge element.[7] As the trial court correctly noted, the actions of the Village defendants, after they obtained knowledge of the relevant lease provisions on June 3, 2022, did not amount to interference with plaintiff's contract rights under the lease. While plaintiff alleged that the Village defendants did not cancel the sales contract until about a week after they received plaintiff's cease and desist letter, that fact does not give rise to a reasonable inference that the Village defendants were taking action to interfere with plaintiff's contract rights under the lease or to induce Third & Crescent to breach the lease, even when viewed in the light most favorable to plaintiff. In fact, the combined allegations and inferences established that the Village defendants learned of the relevant provisions of the lease and took action to stop proceeding on the sales contract a short time later on advice of counsel.

[7]Although the case law in Illinois on the third element of tortious interference with contract generally refers to inducement (see, *e.g.*, *HPI Health Care Services, Inc.*, 131 Ill. 2d at 154-55), the Restatement recognizes that there are other forms of interference that may satisfy the third element as well. See Restatement (Second) of Torts § 766, cmts. h, k (1979).

¶ 44    Nor does an inference of interference or inducement arise from the fact that the Village defendants refused to give plaintiff a letter stating that the Village was no longer interested in purchasing the property or from the fact that Franz noted in one of his manager's reports that the Village might revisit a possible purchase of the property at a later time. Viewed in the light most favorable to plaintiff and considered with the other allegations contained in the first amended complaint and the reasonable inferences therefrom, those facts established only that the Village was not willing to give up, for all time, any interest that it had in possibly purchasing the property. We, therefore, reject plaintiff's assertion in the alternative on this issue.

¶ 45                              III. CONCLUSION

¶ 46    For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 47    Affirmed.

*Law Offices of Charles Chejfec, LLC v. Franz*, 2023 IL App (3d) 230083

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 22-LA-605; the Hon. Timothy J. McJoynt, Judge, presiding. |
| **Attorneys for Appellant:** | Charles Chejfec, of Law Offices of Charles Chejfec LLC, of Wheaton, for appellant. |
| **Attorneys for Appellee:** | Michael E. Kujawa and Deborah A. Ostvig, of Schain, Banks, Kenny & Schwartz, Ltd., of Chicago, for appellees. |