NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230607-U

NO. 4-23-0607

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 13, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| KEVIN AYO and GAYNELL AYO, | ) | Appeal from the |
| Plaintiffs-Appellants, | ) | Circuit Court of |
| v. | ) | Pike County |
| LOUIS J. QUINTERO and LOUIS QUINTERO II, | ) | No. 22LA5 |
| Defendants-Appellees | ) | |
| | ) | Honorable |
| | ) | John Frank McCartney, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court affirmed the trial court's dismissal of plaintiffs' complaint for (1) tortious interference with prospective economic advantage and (2) private nuisance because the complaint did not allege sufficient facts to state a claim for which relief could be granted.

¶ 2    In July 2022, plaintiffs, Kevin Ayo and Gaynell Ayo, filed a complaint against defendants, Louis J. Quintero and Louis Quintero II, alleging (1) "intentional interference with prospective economic advantage" and (2) private nuisance. Plaintiffs alleged generally that defendants had intentionally interfered with a contract for the sale of plaintiffs' land to a third-party buyer, causing the buyer to withdraw from the contract, which resulted in the land being foreclosed on and sold for substantially less than the agreed-upon amount in the contract.

¶ 3    In August 2022, defendants filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2022)), asserting plaintiffs failed to state a cause of action. In October 2022, the trial court granted the motion and, in June 2023,

dismissed the complaint with prejudice.

¶ 4        Plaintiffs appeal, arguing the trial court erred by dismissing their complaint because they alleged sufficient facts to state a cause of action for (1) "intentional interference with a prospective economic advantage" and (2) private nuisance. We disagree and affirm.

¶ 5                                    I. BACKGROUND

¶ 6                                    A. The Complaint

¶ 7        In July 2022, plaintiffs filed a complaint against defendants, claiming (1) "intentional interference with prospective economic advantage" and (2) private nuisance and requesting "civil damages in the amount of $160,000.00, plus damages for emotional distress and court costs herein." The allegations in that complaint are as follows.

> "1.     Plaintiffs are the previous owners of certain real estate, being the Southwest Quarter of the Southeast Quarter of Section 16, Township 4 South, Range 6 West of the Third Principal Meridian, Pike County, Illinois [(hereafter plaintiffs' property). (We note that a "quarter of a quarter of a section" is 40 acres.)]
>
> 2.     At all times relevant to this Complaint, Defendants were the owners of certain real estate, being the Northwest, Northeast, and Southeast Quarters of the Southeast Quarter of Section 16, Township 4 South, Range 6 West of the Third Principal Meridian, Pike County, Illinois [(hereafter defendants' property)].
>
> 3.     In April of 2005, Plaintiffs became the owner of [plaintiffs' property].
>
> 4.     Subsequent to Plaintiffs' acquisition of [plaintiffs' property],

Defendants offered to Plaintiffs to purchase [the property] approximately ten times, always for substantially below market price.

5. Each such offer to purchase was rejected by Plaintiffs.

6. In February of 2017, Farmers National Bank of Griggsville filed suit against Plaintiffs to foreclose upon [plaintiffs' property], which action was later dismissed without prejudice in November that same year.

7. The principal use of [plaintiffs' property] by Plaintiffs was as recreational property, with an emphasis on the use of the land as hunting grounds.

8. From October to January 2021, Justin Bees[e] hunted upon [plaintiffs' property] by agreement with the Plaintiffs.

9. Defendants were aware of Mr. Beese's use of [plaintiffs' property].

10. On July 15, 2020, Plaintiffs signed a contract for sale of [plaintiffs' property to Mr. Beese for the purchase price of $245,000.00; said contract is attached as Addendum hereto and incorporated herewith. [(We note that no contract is present in the record on appeal.)]

11. On July 29, 2020, Farmers National Bank of Griggsville filed a motion to reinstate its foreclosure proceedings upon [plaintiffs' property], which motion was subsequently granted.

12. In early 2020, after learning of the pending sale between Mr. Beese and Plaintiffs, Defendants cleared a swath of land approximately one hundred feet wide along the entirety of the Northern and Eastern boundaries of [plaintiffs' property] and subsequently, on or about early August, erected an eight foot tall fence along said boundaries.

13. The purpose and effect of said fence was to prevent the natural passage of game from [defendants' property] onto [plaintiffs' property].

14. During October of 2020, being deer archery/youth shotgun season, Defendants time and time again rode off[-]road vehicles along the Northern and Eastern boundary lines of [plaintiffs' property], the purpose and effect of which was to interfere with hunting activities upon [plaintiffs' property] by Mr. Beese.

15. In October 13 of 2020[,] Mr. Beese withdrew from his contract for sale with Plaintiffs, specifically citing Defendants' actions.

16. On December 8, 2020, a judgment of foreclosure upon [plaintiffs' property] was entered in the Pike County Circuit Court in favor of Farmers National Bank of Griggsville.

17. Following said foreclosure, on April 23, 2021[, plaintiffs' property] was purchased at Sheriff's sale by Defendants for substantially below market price.

18. At the time of said sale, Plaintiffs owed approximately $85,000.00 upon their said mortgage with Farmers National Bank of Griggsville."

¶ 8　　　　　　　　　　B. Defendants' Motion To Dismiss

¶ 9　　　In August 2022, defendants filed a motion to dismiss the complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)) in which they argued that plaintiffs had failed to state a cause of action for either of their claims. Specifically, defendants argued that although the complaint alleged they cleared the land and erected a fence to interfere with Beese's hunting, those activities as alleged began in early 2020, before Beese entered the contract and began hunting on the property. Further, defendants asserted that they were "entitled to do with

- 4 -

their land as they please, including clearing land to place an eight[-]foot tall fence."

¶ 10 Plaintiffs' filed a response arguing that (1) defendant was incorrect to imply that defendants' building of the fence "occurred prior to their knowledge of the pending sale between the Plaintiffs and Justin Bees[e]," (2) defendants do not make any "excuse" for their behavior in the complaint, (3) defendants' actions listed in the complaint were the actions that caused Beese to withdraw from the contract, and (4) defendants were not entitled to build a fence to impede plaintiffs' ability to hunt.

¶ 11 C. The Trial Court's Order

¶ 12 In October 2022, following a hearing, the trial court granted defendants' motion to dismiss without prejudice in a written order. Citing *City of Dixon v. Messer*, 136 Ill. App. 488 (1907), the court wrote that defendants were "entitled to do with their land as they please, including clearing land to place an eight-foot-tall fence or riding off[-]road vehicles at any time they desire on their property." Further, because plaintiffs did not allege that defendants' conduct took place on plaintiffs' property and their behavior was "not contrary to law or their rights as landowners," plaintiffs had failed to state a cause of action for either count of their complaint. The court gave plaintiffs 21 days to amend their complaint.

¶ 13 Plaintiffs did not replead their complaint. Instead, in November 2022, they appealed, and in June 2023, this court dismissed the appeal for lack of jurisdiction. *Ayo, Kevin et al. v. Quintero, Louis J. et al.*, No. 4-22-1019 (2023) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 14 That same month, the trial court ordered the case dismissed with prejudice, noting that plaintiffs failed to amend their complaint.

¶ 15 This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17        Plaintiffs appeal, arguing the trial court erred by dismissing their complaint because they alleged sufficient facts to state a cause of action for (1) "intentional interference with a prospective economic advantage" and (2) private nuisance. We disagree and affirm.

¶ 18         A. Section 2-615 Motion To Dismiss and the Standard of Review

¶ 19        A motion to dismiss under section 2-615 of the Code tests the legal sufficiency of a complaint. *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 39, 215 N.E.3d 843.

> "In ruling on a section 2-615 motion, a court must accept as true all well-pleaded facts and all reasonable inferences therefrom, to determine whether the complaint's allegations—construed in the light most favorable to the plaintiff— are sufficient to establish a cause of action upon which relief may be granted." *Id.*

¶ 20        "A pleading that merely paraphrases the elements of a cause of action in conclusory terms is insufficient. [Citation.] On the other hand, a plaintiff need not set out his or her evidence in the complaint. A fact is well pleaded if a plaintiff has clearly set out the *ultimate* fact he or she intends to prove." (Emphasis in original.) *Paul v. County of Ogle*, 2018 IL App (2d) 170696, ¶ 34, 103 N.E.3d 585. To the extent that the complaint offers conclusions unsupported by allegations of fact, we do not accept those conclusions as true. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30, 856 N.E.2d 1048, 1053 (2006).

¶ 21        Appellate courts review a dismissal under section 2-615 *de novo*. *O'Connell v. County of Cook*, 2022 IL 127527, ¶ 19, 210 N.E.3d 1251. Appellate courts may affirm a trial court's grant of a section 2-615 motion to dismiss on any basis supported by the record. *Law Offices of Charles Chejfec, LLC v. Franz*, 2023 IL App (3d) 230083, ¶ 37.

¶ 22                                B. The Tortious Interference Claim

¶ 23          Plaintiffs argue that the trial court erred by granting defendants' motion to dismiss because (1) they alleged sufficient facts to state a cause of action for "intentional interference with a prospective economic advantage" and (2) the court misapplied the principle that property owners have a general right to enjoy their property in such a manner as they see fit to defeat plaintiffs' claim. We disagree.

¶ 24                                1. *The Applicable Law*

¶ 25          Plaintiffs' claim of "intentional interference with a prospective economic advantage" falls under a category of torts that we generally refer to as tortious interference. Illinois recognizes two similar but distinct types of tortious interference—namely, (1) "tortious interference with prospective economic advantage" (*Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 483, 693 N.E.2d 358, 370 (1998)) and (2) "intentional interference with existing contract rights" (*HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154, 545 N.E.2d 672, 676 (1989)).

¶ 26          We note that these torts are referred to by various other names—such as "intentional interference with a business expectancy" (*Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 862, 893 N.E.2d 981, 993 (2008)), "interference with contractual relations" (*Philip I. Mappa Interests, Ltd. v. Kendle*, 196 Ill. App. 3d 703, 708, 554 N.E.2d 1008, 1011 (1990)), "tortious interference with prospective advantage" (*Belden Corp. v. InterNorth, Inc.*, 90 Ill. App. 3d 547, 553, 413 N.E.2d 98, 102 (1980)), and "tortious interference with contract" (*Law Offices of Charles Chejfec, LLC*, 2023 IL App (3d) 230083, ¶ 1). However, for the purposes of this order, we refer to the torts as (1) tortious interference with prospective economic advantage and (2) tortious interference with contract.

¶ 27        To state a cause of action for tortious interference with a prospective economic advantage, a plaintiff must plead sufficient facts to establish the following:

> "(1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Dowd*, 181 Ill. 2d at 484.

¶ 28        "It is insufficient for a plaintiff to show that the defendant merely succeeded by ending the business relationship or interfering with the expectancy; rather, 'purposeful interference'—a showing that the defendant has committed some impropriety—is needed." *Grako v. Bill Walsh Chevrolet-Cadillac, Inc.*, 2023 IL App (3d) 220324, ¶ 36.

¶ 29        To state a cause of action for tortious interference with contract, a plaintiff must plead sufficient facts to establish the following:

> "(1) that a valid and enforceable contract existed between the plaintiff and another party, (2) that the defendant was aware of that contract relation, (3) that the defendant intentionally and unjustifiably induced a breach of the contract, (4) that there was a subsequent breach of the contract by the other party that was caused by the defendant's wrongful conduct, and (5) that the plaintiff suffered damages." *Law Offices of Charles Chejfec, LLC*, 2023 IL App (3d) 230083, ¶ 38 (citing *HPI Health Care Services, Inc.*, 131 Ill. 2d 145).

¶ 30                                    2. *This Case*

¶ 31         a. Tortious Interference With a Prospective Economic Advantage

¶ 32        Plaintiffs argue that they sufficiently alleged the first element of tortious

interference with a prospective economic advantage—namely, the reasonable expectancy of entering a business relationship—because they alleged that "they had in place an executed contract with [Beese] for the sale of their real estate." However, a contract to purchase real estate is not a *prospective* business relationship; instead, it is a consummated business relationship reduced to writing, for which exists the similar but separate cause of action of tortious interference with a contract. See, *e.g.*, *Griffin v. Jones*, 170 F. Supp. 3d 956, 969 (W.D. Ky. 2016) ("Once the parties have consummated their relationship in the form of a contract, tortious interference with that relationship would be a claim for tortious interference with contract."); *Preston v. Atmel Corp.*, 560 F. Supp. 2d 1035 (D. Colo. 2008) ("In short, intentional interference with a prospective business relation requires a showing of intentional and improper interference preventing formation of a contract."); Restatement (Second) of Torts § 766B cmt. c (1979) ("The relations protected against intentional interference by the rule stated in this Section include any prospective contractual relations ***. Included are interferences with *** the opportunity of selling or buying land *** and any other relations leading to potentially profitable contracts.").

¶ 33        Because plaintiffs do not allege a prospective or expected business relationship, any claim premised upon tortious interference with a prospective economic advantage must fail. However, "when analyzing a party's request for relief, courts should look to what the pleading contains, not what it is called." *In re Haley D.*, 2011 IL 110886, ¶ 67, 959 N.E.2d 1108. Accordingly, we can interpret plaintiffs' claim for tortious interference as a claim for tortious interference with contract. Even so, defendants' claim is still deficient.

¶ 34                            b. Tortious Interference With a Contract

¶ 35                                   i. *The Law*

¶ 36        Turning to the claim of tortious interference with a contract, "the interfering

defendant must have knowledge of both the contract and of the fact that he is interfering with the performance of that contract." *Law Offices of Charles Chejfec, LLC*, 2023 IL App (3d) 230083, ¶ 41 (citing Restatement (Second) of Torts § 766, cmt. i (1979)). "A defendant's acts are intentional if the defendant, in committing those acts, either desired to bring about the harm to the plaintiff (the breach of the contract by the other party) or knew that such a result was substantially certain to be produced by those acts." *Id*. ¶ 40. "Whether a defendant's acts are improper, however, is determined based upon a consideration of several factors, including (1) the nature of the defendant's conduct, (2) the defendant's motive, (3) the interests of the defendant and of the other party, and (4) the social interests involved." *Id.* "A bare assertion that an act was done maliciously or with a certain purpose or intent is insufficient where there is no statement of facts that shows such purpose or intent." *Skopp v. First Federal Savings of Wilmette*, 189 Ill. App. 3d 440, 449, 545 N.E.2d 356, 362 (1989).

¶ 37                                                    ii. *This Case*

¶ 38            Applying the elements of tortious interference with a contract to the present case, in order for plaintiffs to state a cause of action for tortious interference with a contract they needed to allege well-pleaded facts showing that (1) defendants knew about the contract with Beese and that his performance was conditioned on undisrupted hunting, (2) defendants intended for Beese to withdraw from the contract or knew that he was substantially certain to withdraw from the contract because of their conduct, and (3) defendants' conduct of building a fence on their property and driving off-road vehicles was improper conduct. Plaintiffs' complaint is deficient in each of these respects.

¶ 39            First, plaintiffs do not allege any facts showing that defendants knew about the contract with Beese or the conditions of the contract before building the fence or riding off-road

vehicles. Instead, plaintiffs allege that defendants learned of *the pending sale* with Beese in "early 2020" and allege the contract was executed in July 2020. Because plaintiffs allege that defendants knew about the pending sale after alleging that Beese executed the contract, one inference we could draw is that plaintiffs mean to say that defendants knew about the pending contract. However, that reading is too charitable given (1) the allegation that defendants learned about the pending sale in "early 2020," which naturally implies earlier than July and (2) plaintiffs' stated theory of recovery is tortious interference with a prospective economic advantage.

¶ 40        The specifics of plaintiffs' allegations are of particular concern, because, as we wrote earlier, tortious interference comes in two flavors—namely, tortious interference with a prospective economic advantage and tortious interference with a contract—and, depending on which theory plaintiffs pursue, the choice of theory alters the relevancy of certain allegations and the reasonableness of inferences based on those allegations.

¶ 41        For example, an allegation of a "pending sale" invokes the business expectancy element of tortious interference with a prospective economic advantage but executing a contract invokes the contract element of tortious interference with a contract. The problem is that the elements of one are exclusive of the other. The conduct that began as a way to interfere with a *prospective* business relationship—namely, as plaintiffs allege, defendants' building a fence in early 2020 to stop Beese from buying the property—although ultimately finished after the contract was signed, cannot be tortious interference with that contract because the contract is evidence that defendants failed to interfere with the formation of a business relationship.

¶ 42        The allegation of defendants' knowledge of a "pending sale" cannot pull double duty; it is either an allegation of knowledge of a (1) contract or (2) prospective business

relationship. Given the complaint as a whole, we cannot make a reasonable inference that "pending sale" in the complaint referred to the July 2020 contract with Beese when (1) defendants allegedly learned of that sale in "early 2020" and (2) knowledge of the pending sale to Beese is an element of tortious interference with a prospective economic advantage, which is the tort that plaintiffs explicitly alleged in their complaint.

¶ 43  Nonetheless, even if knowledge of a pending sale was sufficient for us to reasonably infer knowledge of the subsequent contract, defendants "must have knowledge of both the contract and of *the fact that [they are] interfering with the performance of that contract*." (Emphasis added.) *Law Offices of Charles Chejfec, LLC*, 2023 IL App (3d) 230083, ¶ 41 (citing Restatement (Second) of Torts § 766, cmt. i (1979)). However, nothing alleged in the complaint even hints at defendants' awareness of what conduct would interfere with Beese's performance of the contract. (Again, we note that the record does not include a copy of the contract.) And it is unreasonable to infer that a buyer would withdraw from a contract to purchase roughly 40 acres of property because of a rural neighbor's riding an off-road vehicle during the first two weeks of hunting season.

¶ 44  Second, besides conclusory allegations regarding defendants' alleged intent in building the fence or driving vehicles on their property, plaintiffs' complaint does not give rise to the reasonable inference that defendants intended to cause Beese to withdraw from the contract or that his withdrawal was substantially likely to result from their conduct. As we have stated, (1) the complaint does not allege that defendants knew about the terms of the contract and (2) nothing about defendants' erecting the fence or riding off-road vehicles on their own property is facially improper or demonstrative of defendants' tortious intent.

¶ 45  Further, even the inference that Beese's inability to hunt caused him to withdraw

- 12 -

from the contract is dubious because the complaint states that he hunted on the property from October 2020 through January 2021, which is months after both (1) "defendants' actions" took place and (2) Beese's withdraw from the contract on October 13.

¶ 46 Last, plaintiffs fail to allege how defendants' actions were improper. In tortious interference cases "whe[n] the complaint establishes the existence of a privilege, the plaintiff must plead and later prove that defendant acted unjustifiably, *i.e.*, inconsistent with his privilege." *Roy v. Coyne*, 259 Ill. App. 3d 269, 283, 630 N.E.2d 1024, 1033 (1994); see *HPI Health Care Services, Inc.*, 131 Ill. 2d at 156 ("[I]t is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious.").

¶ 47 Here, because the complaint alleged that defendants were neighboring property owners acting on their own land, plaintiffs' allegations clearly raise the issue of property owner's privilege. See *City of Dixon v. Messer*, 136 Ill. App. 488, 491 (1907) (holding that a property owner has the right to use and enjoy his property in the manner he sees fit). Accordingly, to survive dismissal, plaintiffs must plead how defendants' actions were unjust or inconsistent with their privilege as property owners—in other words, improper.

¶ 48 Ultimately, building a fence on one's own property, even with the purpose of impeding the movement of game, is not in itself improper behavior. We note that plaintiffs do not assert that by building the fence, defendants violated some right, covenant, ordinance, or any other restriction on the use of their property. Moreover, plaintiffs make no allegations to support a reasonable inference that defendants drove off-road vehicles with the intent for Beese to withdraw from the contract or that defendants knew or believed that the contract for sale was conditioned on Beese's hunting. Instead, plaintiffs make the conclusory assertion that defendants' driving was intended to interfere with Beese's hunting, an assertion that, even if

taken as true, does not defeat defendants' rights as property owners.

¶ 49 Although plaintiffs' complaint imparts the air of commerciality to their tortious interference claim, this case is simply a refrain of the classic dispute between neighbors—namely, "the enjoyment of my property is more important than yours." Looking at the complaint in the light most favorable to plaintiffs, we conclude that (1) plaintiffs have failed to state either a claim for tortious interference with a prospective economic advantage or tortious interference with a contract and (2) the trial court did not err by dismissing plaintiffs' complaint with prejudice.

¶ 50 C. Private Nuisance

¶ 51 Plaintiffs argue that the trial court erred by dismissing their private nuisance claim because they alleged sufficient facts to state cause of action for private nuisance. We disagree.

¶ 52 1. *The Applicable Law*

¶ 53 "A private nuisance is a substantial invasion of another's interest in the use and enjoyment of his or her land. The invasion must be [(1)] substantial, [(2)] either intentional or negligent, and [(3)] unreasonable." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 204, 680 N.E.2d 265, 277 (1997). Whether particular conduct constitutes a nuisance is determined by the conduct's effect on a reasonable person without accounting for any special sensitivity the affected landowner may have. *Id.*

¶ 54 Unlike trespass, a nuisance is an interference with the interest in the private use and enjoyment of the land and does not require interference with possession. *Id.* Nevertheless, "to state a cause of action for private nuisance, among the other elements, it is necessary to allege a physical invasion of the plaintiff's property." *Schiller v. Mitchell*, 357 Ill. App. 3d 435, 442, 828 N.E.2d 323, 330 (2005) (citing *Chicago Flood Litigation*, 176 Ill. 2d at 205). "An

invasion constituting a nuisance can include noise, smoke, vibration, dust, fumes, and odors produced on the defendant's land and impairing the use and enjoyment of neighboring land." *Dobbs v. Wiggins*, 401 Ill. App. 3d 367, 376, 929 N.E.2d 30, 39 (2010). In essence, the nuisance must be physically offensive to the senses to the extent that it makes life uncomfortable. *Chicago Flood Litigation*, 176 Ill. 2d at 205.

¶ 55                                   2. *This Case*

¶ 56          Plaintiffs argue that they alleged sufficient facts to state a claim for private nuisance because defendants' conduct in building the fence and riding off-road vehicles caused "extensive and purposeful disturbance" of game without any countervailing benefit to defendants' enjoyment of their own property. Defendants argue that plaintiffs' claim fails because they "do not assert that there is an invasion by something perceptible to the senses" and their actions were an exercise of their rights as property owners. We agree with defendants.

¶ 57          Taking only those well-pleaded facts as true, the relevant allegations in the complaint are as follows.

¶ 58          In August 2020, defendants built on their own property an eight-foot-tall fence that impeded the movement of deer onto plaintiffs' neighboring property. During deer hunting season, in October 2020, defendants "time and time again rode off[-]road vehicles" along the boundary of their and plaintiffs' property, which interfered with Beese's hunting on plaintiffs' property. That same month, Beese withdrew from the contract to purchase that land because of "defendants' actions."

¶ 59          Looking at these allegations, it is clear that plaintiffs do not allege a substantial invasion of their property, whether by sound, dust, light, odor, vibration, or any other physical thing offensive to the senses. See *Chicago Flood Litigation*, 176 Ill. 2d at 205.

¶ 60      First, defendants' action in building a fence, as alleged in the complaint, cannot possibly amount to a private nuisance. That is to say, nothing in the complaint suggests that (1) the fence was "unusual" as plaintiffs argue on appeal or (2) plaintiffs had any right to be free of a fence on the neighboring property. A fence's primary function is to keep things on and off one's property and unless that fence created a substantial invasion of defendants' property or deprived plaintiffs of a right, its construction, although annoying to plaintiffs, is not an actionable offense. See *City of Dixon*, 136 Ill. App. at 491 ("[A property owner] may build a fence or a wall fifty feet high on his own land, and thereby cut off the light and air and view of his neighbor, unless the neighbor has by grant or by prescription acquired the right to light, air and view over such property.").

¶ 61      Second, although plaintiffs' allegations regarding the off-road vehicles could give rise to an inference that the use of the vehicles, which interfered with Beese's hunting, did so via some discernable phenomenon that impacted plaintiffs' enjoyment of his property, the form and manner of that invasion is not alleged. Nonetheless, based on these allegations, any invasion caused by the off-road vehicles was clearly not substantial.

¶ 62      Just like plaintiffs use their property for hunting, which can be loud and dangerous, defendants too can use their property for rural recreational activities—namely, driving off-road vehicles—and plaintiffs do not allege the land was unsuited to that purpose. At best, we can infer that defendants' conduct of driving vehicles on their property "time and time again" in the first two weeks of October was supposedly invasive enough to scare deer on plaintiffs' property. However, conduct that might be frightening to timid animals, although frustrating to a hunter, does not constitute the sort of invasion substantially offensive to the sensibilities of a reasonable person.

¶ 63       Last, the damages plaintiffs pleaded are inconsistent with a claim of private

nuisance and barred by the *Moorman* doctrine. See *Moorman Manufacturing Co. v. National

Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982).

¶ 64       In *Moorman*, the supreme court adopted the economic-loss rule that a "plaintiff

cannot recover for solely economic loss under the tort theories of strict liability, negligence and

innocent misrepresentation." *Moorman*, 91 Ill. 2d at 91. The doctrine also extends to private

nuisance claims (*Chicago Flood Litigation*, 176 Ill. 2d at 206-07) and contracts for services

(*Avery v. GRI Fox Run, LLC*, 2020 IL App (2d) 190382, ¶ 55, 160 N.E.3d 155 (stating a plaintiff

seeking to recover solely economic losses due to defeated expectations of a commercial bargain

cannot recover in tort, regardless of the plaintiff's inability to recover in contract)). The supreme

court describes economic loss as "damages for inadequate value, costs of repair and replacement

of the defective product, or consequential loss of profits—without any claim of personal injury

or damage to other property." (Internal quotation marks omitted.) *Moorman*, 91 Ill. 2d at 82.

¶ 65       The supreme court provided the following three exceptions to the economic-loss

rule:

> "(1) [When] the plaintiff sustained personal injury or property damage resulting
>
> from a tortious event, *i.e.,* a sudden or dangerous occurrence [citation]; (2) [when]
>
> the plaintiff's damages are proximately caused by a defendant's intentional, false
>
> representation, *i.e.,* fraud [citation]; and (3) [when] the plaintiff's damages are
>
> proximately caused by a negligent misrepresentation by a defendant in the
>
> business of supplying information for the guidance of others in their business
>
> transactions. [Citations.] In each of these three situations, the plaintiff may
>
> recover in tort against the defendant." *Fireman's Fund Insurance Co. v. SEC*

*Donohue, Inc.*, 176 Ill. 2d 160, 165, 679 N.E.2d 1197, 1199-1200 (1997) (citing *Moorman*, 91, Ill. 2d at 86, 88-89).

¶ 66 Here, plaintiffs did not allege any property damage nor any deprivation of their use or enjoyment of their property. Instead, the damages plaintiffs seek in their count of private nuisance, appear to be solely the expectancy damages for the lost value of the contract with Beese—in other words, an economic loss barred by the *Moorman* doctrine. See *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 423, 821 N.E.2d 1099, 1143 (2004) ("[T]he damages sought by the plaintiffs are 'solely economic damages' in the sense that they represent costs incurred in the absence of harm to a plaintiff's person or property.").

¶ 67 We emphasize that Illinois is a fact pleading jurisdiction—meaning, plaintiffs are required to plead the *ultimate facts* to be proved that would entitle them to relief. *Paul*, 2018 IL App (2d) 170696, ¶ 34. Because (1) plaintiffs' allegations that defendants' fence disrupted the movement of deer and defendants' driving off-road vehicles interfered with Beese's hunting, if proved, would not entitle plaintiff to relief for private nuisance and (2) plaintiffs allege only an economic loss, we conclude that plaintiffs have not alleged sufficient facts to state a cause of action for private nuisance and the trial court did not err by granting defendants' motion to dismiss.

¶ 68                                    III. CONCLUSION

¶ 69 For the reasons stated, we affirm the trial court's decision.

¶ 70 Affirmed.